## COUSINS ET AL. v. WIGODA

No. A–1.   Decided July 1, 1972

See: 463 F. 2d 603.

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicants have applied to me as Circuit Justice to stay an order entered by the Court of Appeals for the Seventh Circuit on Thursday, June 29, 1972. A divided panel of that court vacated an injunction issued at applicants' behest by the District Court for the Northern District of Illinois and further ordered that its mandate issue immediately. Because applicants' application raised what seemed to me to be significant legal issues of importance not only to them but to the public as a whole, I heard oral argument of counsel on the application.

In April 1972, following the Illinois primary election, respondent Wigoda brought an action in the circuit court of Cook County, Illinois, requesting a declaratory judgment that he and others had been duly elected as delegates to the Democratic National Convention in accordance with Illinois law, and seeking an injunction against applicants to prohibit them from interfering with or impeding the functioning of respondent as a duly elected delegate.

Applicants removed this action to the United States District Court, from which it was then remanded to the state court. Applicants then brought a separate action in the District Court, alleging that the pendency of the state court action infringed their associational rights guaranteed by the First and Fourteenth Amendments to the United States Constitution. In reliance on 42 U. S. C. § 1983, they sought an injunction against further prosecution of the state court action. The District Court heard evidence and enjoined the prosecution of so much of the state court action as sought injunctive relief against the applicants, leaving the state court free to proceed with the declaratory judgment aspect of respondent's action. Respondent appealed from the order of the District Court granting injunctive relief, and the Court of Appeals then entered the order described above vacating the injunction of the District Court.

Both the state and federal court actions arise out of disputes between the parties as to what group of delegates from Illinois shall be seated at the Democratic National Convention to be held in Miami Beach, Florida, beginning July 10. Respondent contends that he and the others whom he seeks to represent were delegates elected to the convention in accordance with Illinois law at the Illinois primary election. Applicants contend that the Illinois delegate selection process does not conform to standards established by the national Democratic Party, and that, therefore, they and others associated with them, rather than respondent, should be seated by the Democratic National Convention.

Since the Court of Appeals entered its order of June 29, two additional events have supervened. On June 30, the circuit court of Cook County in which respondent's original action was pending entered a temporary restraining order enjoining applicants from "submitting or causing to be submitted to the National Democratic Party, the

Democratic National Committee or the Credentials Committee thereof, the name, or names, of any person, or persons, as prospective delegates to the 1972 Democratic National Convention" from various Illinois districts. That order also provided that "except as herein before ordered" nothing in the order should prevent the applicants from "speaking on behalf of their challenge before the Credentials Committee, holding meetings or engaging in other activities commensurate with their rights of free speech and association under the First and Fourteenth Amendments to the United States Constitution." The circuit court further ordered that the matter be set for hearing on the motion of respondent for a preliminary injunction at 11 a. m. on Wednesday, July 5, in that court.

On June 30, the Credentials Committee of the Democratic National Convention voted to sustain the challenge made by applicants and others to respondent and the delegates associated with him, and to recommend to the convention that applicants and other delegates associated with them be seated by the Democratic National Convention. It is my understanding that this action on the part of the Credentials Committee is subject to review by the convention at its meeting in Miami Beach.

At the outset I am faced with a problem which, if not technically one of authority, is at the very least one of the scope of my discretion in acting on the application. The authority of a Circuit Justice to grant a stay in cases such as this stems from the provisions of 28 U. S. C. § 2101 (f), which reads in pertinent part as follows:

> "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court.

The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court . . . ."

While this case is one in which the judgment of the Court of Appeals is undoubtedly "subject to review by the Supreme Court on writ of certiorari," as a practical matter it will become moot upon the adjournment of the Democratic National Convention, which customarily takes place in the latter part of the week in which the convention opens. On June 29, this Court adjourned until the first Monday in October, as is its annual custom. There will therefore be no possibility of this Court's convening and granting a writ of certiorari to review the judgment below unless THE CHIEF JUSTICE should determine that a Special Term of Court be convened in order to hear this case. Such Special Terms have, to my knowledge, been held only four times in the recent history of the Court: In 1942 the Court was convened to consider whether the President had authority in time of war to exclude enemy aliens from access to civilian courts, and to order them tried before military tribunals for acts of sabotage. *Ex parte Quirin,* 317 U. S. 1 (1942). A Special Term was convened in 1953 to hear the Government's motion to vacate a stay of execution of a death sentence against the Rosenbergs for espionage, after exhaustive appellate review of their conviction. *Rosenberg* v. *United States,* 346 U. S. 273 (1953). See also *id.,* at 271. In 1958 a Special Term was held to review the Little Rock school desegregation case in time for implementation in the fall school term. *Cooper* v. *Aaron,* 358 U. S. 1 (1958).

Without in any way disparaging the importance of this case not only to the parties involved in it, but to the political processes of the country, I simply do not believe that it is the same type of case which has caused the Court to convene in Special Term on previous occasions.

Both the presumptive availability of the Illinois courts to redress any deprivation of applicants' constitutional rights, which I discuss in more detail below, and the necessarily highly speculative nature of any connection between the outstanding order of the state court and the choice of a presidential candidate by the Democratic National Convention lead me to conclude that this case is not comparable to those. I therefore conclude that this is not a case in which I would be warranted in requesting THE CHIEF JUSTICE to convene a special session of this Court. See the opinion of Mr. Justice Harlan in chambers in *Travia* v. *Lomenzo,* 86 S. Ct. 7, 15 L. Ed. 2d 46 (1965).

Having so concluded, I must recognize the fact that were I to grant the stay requested by applicants, the result would be a determination on the merits of the federal litigation in their favor without any prospect of review of my action by the full membership of this Court. While I think that the provisions of 28 U. S. C. § 2101 (f) confer upon me the technical authority to grant a stay in these circumstances, I would be moved to use that authority only if I were satisfied that the judgment under review represented the most egregious departure from wholly settled principles of law established by the decisions of this Court.

The majority of the panel of the Court of Appeals, in its opinion released yesterday, relied on the principles of comity between federal and state courts as enunciated by this Court's decisions in *Younger* v. *Harris,* 401 U. S. 37 (1971), and *Mitchum* v. *Foster,* 407 U. S. 225 (1972). While *Younger* and its companion cases involved state criminal prosecutions, the principles of federal comity upon which it was based are enunciated in earlier decisions of this Court dealing with civil as well as criminal matters. See the cases cited in *Mitchum, supra,* at 243. The Court in *Mitchum,* after holding that 42 U. S. C.

§ 1983, under which petitioners brought this action in the District Court, was an exception to the provisions of the Anti-Injunction Act, 28 U. S. C. § 2283, went on to say:

> "In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Ibid.*

While the test to be applied may be less stringent in civil cases than in criminal, the cases cited in *Mitchum* make clear that the federal courts will not casually enjoin the conduct of pending state court proceedings of either type. Applicants make out what must be described as at least a plausible case that a portion of the decree issued by the circuit court of Cook County does abridge their associational rights guaranteed by the First and Fourteenth Amendments. But the teaching of *Younger, supra,* and *Mitchum, supra,* as I understand them, is that a plausible claim of constitutional infringement does not automatically entitle one to avail himself of the injunctive processes of the federal courts in order to prevent the conduct of pending litigation in the state courts. The opinion issued by the Court of Appeals majority specifically alluded to applicants' failure to allege that they could not adequately vindicate their constitutional claims in the Illinois state courts, and I must conclude that those courts are available to applicants for this purpose.

Mindful, therefore, of the principles of comity enjoined by our federal system, of the deference due to the judgment of the Court of Appeals (see *Breswick & Co.* v. *United States,* 75 S. Ct. 912, 100 L. Ed. 1510 (1955) (Harlan, J., in chambers)), and of the extraordinary burden which falls upon applicants when they seek a stay from a single Justice which would in effect dispose of the litigation on its merits, I conclude that they have failed to meet that burden. An order will therefore be entered denying the application for a stay of the order and mandate of the Court of Appeals.