**Elizabeth Ann DUKE et al., Plaintiffs-Appellees,**

**v.**

**The STATE OF TEXAS et al., Defendants-Appellants.**

**No. 71-2845.**

United States Court of Appeals,
Fifth Circuit.

April 20, 1973.

Rehearing and Rehearing En Banc
Denied June 19, 1973.

**246**

———◆———

Crawford C. Martin, Atty. Gen. of Tex., Howard M. Fender, Asst. Atty. Gen., Austin, Tex., Ralph Mann, Asst. City Atty., Denton, Tex., for defendants-appellants.

Sylvia A. Demarest, Dallas, Tex., Michael J. Whitten, Denton, Tex., for plaintiffs-appellees.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This case involves the recurring and complex problem of the narrow circumstances in which a federal court may enjoin ongoing state judicial proceedings. The lower court issued an injunction restraining the enforcement of an existing state court injunctive order which forbade appellees from speaking upon or entering upon the campus of North Texas State University. Duke v. Texas, E. D.Tex., 1971, 327 F.Supp. 1218. Because the proper disposition of this appeal turned, in part, on the long disputed, never settled question of whether the Civil Rights Act of 1871, Title 42, U.S. C., Section 1983, constitutes an express exception to the broad Congressional policy that federal courts shall not enjoin state proceedings, Title 28, U.S.C., Section 2283, we initially withheld adjudication in this case pending Supreme Court review of that question. Careful study of the Supreme Court's opinion in Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705, constrains us, despite the holding of that case, to reverse the judgment below.

The facts of this case are fully set out in the opinion below, 327 F.Supp. 1218 but a brief survey will help delineate the precise issue before us. On February 9, 1971, Herb Ninness, a student at North Texas State University, Denton, Texas, began discussions with appellees, Elizabeth Ann Duke and David Haylon, neither of whom were students at the University, concerning the possibility of appellees speaking on campus at a rally to protest United States military activities in Southeast Asia planned for February 17, 1971. The same day, the North Texas State Student Senate passed a resolution, designated as Bill No. DEM 46, to "support" the rally. On February 11, Ninness told the President's Cabinet of Student Senate "support" for the rally, and of plans to invite appellees as outside speakers. The Cabinet then denied the request to permit outside speakers on the grounds that the rally was not "sponsored" by the Student Senate or any other recognized campus organization. On February 16, the President of the Student Senate vetoed DEM 46. The Senate then passed a resolution "sponsoring" the rally for the next day, and inviting outside speakers including the appellees to speak at the rally. The Senate President vetoed this second resolution. At the Senate meeting, University Vice President for Student Affairs, William Lindley, discussed the various University regulations governing the use of campus facilities and the presentation of outside speakers. Meanwhile, as events escalated University officials were seeking legal advice concerning ways to control the scheduled demonstration. That evening, appellee Haylon stated in a radio interview that he intended to speak at the rally next day.

On the morning of the 17th, a delegation of students appeared before the President's Cabinet and requested that the demonstration be allowed to proceed despite University rules to the contrary. The University President refused to sus-

pend school rules, but stated that the University regulations applied only to the presence of unsponsored "outside" speakers on campus, not to the discussion of important issues by students alone. The University President then authorized the University Chief of Security Police, Tom Martin, to seek injunctive relief in the state courts.

With the assistance of the County Attorney of Denton County, an application for injunctive relief was prepared and presented to Judge Robert Scofield, District Judge of Denton County. Following a brief ex parte hearing, Judge Scofield issued a temporary restraining order prohibiting Mrs. Duke and Mr. Haylon from entering upon the campus of North Texas State University. Meanwhile, the rally had begun at noon, as scheduled. About 12:30 P.M. the sheriff served the temporary restraining order upon Mrs. Duke. Service upon Mr. Haylon was not accomplished at this time. Both plaintiffs subsequently spoke at the rally, Mrs. Duke reading to the crowd from the papers which had been served upon her. The following morning, the sheriff arrested Mrs. Duke and Mr. Haylon for contempt of court. At the same time the temporary restraining order was served on Mr. Haylon.

Following a hearing on February 24 and 26 and March 4, 1971 Judge Scofield granted a permanent injunction against Mrs. Duke and Mr. Haylon. Judge Scofield also found Mrs. Duke guilty of contempt for remaining at the rally after service of the temporary restraining order and found Haylon guilty of contempt for entering the University campus during a snowball fight at a later date. On March 26, 1971, Judge Scofield signed the order for the permanent injunction.

Meanwhile, appellees Duke and Haylon had sought to invoke the aid of the federal courts. On February 24, 1971 appellees filed the instant action in the lower court alleging that the issuance and enforcement of the state court order was depriving them of their rights to free speech under the First and Fourteenth amendments. The complaint sought federal relief, under Title 42, U.S.C., Section 1983, for alleged deprivations of federal constitutional rights committed by the State of Texas; the lower court did not grant any temporary relief, and service of process upon the defendants-appellants was not completed until after Judge Scofield had orally announced his decision to issue a permanent injunction. The lower court held a series of hearings and conferences, and on May 26, 1971, issued an opinion and order.[1] 327 F.Supp. 1218.

---

1. The order of the lower court is in part as follows:

Having concluded that federal district courts do have the power to provide equitable and other proper relief, e. g. declaratory judgment, 28 U.S.C.A. §§ 2201–2202, Zwickler, supra [Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444], and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), to redress deprivations in violation of Section 1983 rights, I deem the following to be the appropriate responses to the plaintiffs' various prayers for relief:*

(2) The temporary restraining order and the resulting contempt conviction of Mrs. Duke are declared to have been constitutionally invalid.

(3) The university's policies concerning outside speakers are declared to be violative of the First and Fourteenth Amendments.

(4) Campus Security Regulation 3g and its source, Article 2919j, are declared to be unconstitutionally vague and overbroad.

(5) It is declared that Article 466a was unlawfully and unconstitutionally applied to the plaintiffs in the circumstances of this case.

(6) The enforcement by the State of Texas of the permanent injunction against plaintiffs Haylon and Duke, signed on March 26, 1971, by Judge Robert Scofield. is enjoined, from and after this date.

It is so ORDERED.

SIGNED and ENTERED this 26th day of May, 1971

/s/ Wm. Wayne Justice

UNITED STATES DISTRICT JUDGE

* Again excluding contention (1).

The lower court issued an injunction restraining the enforcement of Judge Scofield's injunction, and declared sections of the Texas Code and North Texas State University Regulations unconstitutional or unconstitutional as applied to plaintiffs-appellees. This appeal is taken from the federal court injunction.

## DISCUSSION

■ The court in this case issued its permanent injunction under the purported authority of Title 42, U.S.C., Section 1983 which empowers federal courts to vindicate federal constitutional rights on a broad front. In Mitchum v. Foster, supra, the Supreme Court held that Title 42, U.S.C., Section 1983 is an express exception to the Congressional policy, as expressed in the anti-injunction statute, Title 28, U.S.C., Section 2283, that federal courts shall not grant an injunction to stay proceedings in a state court. The fact that Title 28, U.S.C., Section 2283 does not bar federal injunctions issued under the authority of Title 42, U. S.C., Section 1983 is only the beginning, not the end of our inquiry into the propriety of federal court intervention in ongoing state proceedings such as occurred below. The *Mitchum* court itself ended with a caveat that the effect of Title 42, U.S.C., Section 1983 upon Title 28, U.S.C., Section 2283 should not conclude our analysis:

> "In so concluding, we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding. These principles, in the context of state criminal prosecutions, were canvassed at length last Term in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669, and its companion cases." 407 U.S. at 243, 92 S. Ct. at 2162, 32 L.Ed.2d at 718.

Here, while the lower court correctly anticipated *Mitchum*'s express exception decision, it acted without the benefit of the Supreme Court's warning in Mitchum v. Foster, supra. The lower court's action occurred also without the benefit of our own supervening decision in Palaio v. McAuliffe, 5 Cir., 1972, 466 F.2d 1230, and erroneously concluded that "the strict non-interference doctrine elucidated in *Younger* and its companion cases is limited to State criminal prosecutions . . ." 327 F.Supp. at 1233. As this Court made clear in Palaio v. McAuliffe, supra, however, "the application of the principles of *Younger* should not depend upon such labels as 'civil' or 'criminal,' but rather should be governed by analysis of the competing interests that each case presents." 466 F.2d at 1232–1233.

■ We iterate that the Younger principles of equity, comity and federalism apply to federal intervention in state "civil" as well as "criminal" proceedings, even where the exercise of First Amendment rights is involved; two of our sister Circuits have so held, Cousins v. Wigoda, 7 Cir. 1972, 463 F.2d 603, application for stay denied, 409 U. S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (Rehnquist, Circuit Justice); Lynch v. Snepp, 4 Cir. 1973, 472 F.2d 769. In *Younger,* the Supreme Court made it clear "that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." 401 U.S. at 45, 91 S.Ct. at 751, 27 L.Ed.2d at 676. This interdiction of federal interference in state judicial proceedings is based on federalism concepts of comity and respect for state functions, op. cit. 401 U. S. at 44, 91 S.Ct. at 750, 27 L.Ed.2d at 675–676. In order to overcome it two express pre-conditions must be shown before relief may be granted to a federal plaintiff. First, the moving party must demonstrate that he will suffer irreparable injury if the federal court stays its hand, and second the moving party must demonstrate that he does not have an adequate remedy at law in the state courts, op. cit. 401 U.S. at 43–44, 91 S. Ct. at 750, 27 L.Ed.2d at 675.

Despite determining for itself that the federalism principles of *Younger* are applicable only to strictly criminal prosecutions, the court below proceeded to apply those two principles to the case at hand:

"Thus, plaintiffs Duke and Haylon are subject to a wholesale abridgement of their rights to freedom of speech, press, assembly, and association, which inherently constitutes continuing irreparable injury. The damage suffered by plaintiffs is compounded by the fact that their current inability to communicate fully with their intended audience, North Texas State University students, results in reduced income which, of course, hinders further exercise of the whole range of First Amendment rights. The plaintiffs here are suffering 'genuine and irretrievable damage.' . . . And they are suffering this damage without any adequate remedy at law, as evidenced by the State district court's refusal to consider the constitutional issues, until the course of the State's judicial processes have run to conclusion." 327 F.Supp. at 1234.

■ Was the lower court correct in its application of Younger principles to the facts before it? We address that question.

In issuing its temporary restraining order[2] against Duke and Haylon, the state trial court was proceeding under the authority of Article 466a, Vernon's Ann.Penal Code of Texas, which provides:

Art. 466a. Acts calculated to produce injury or damage to property, person or life of another person; injunctive relief.

Section 1. Every person who, at a time and place and under circumstances reasonably calculated to produce a clear and present and immediate threat or danger to the physical wellbeing, property or life of another, knowingly and willfully commits an act, or urges another to commit an act, so calculated and tending to produce injury or damage to the property, person or life of another person, shall be guilty of a misdemeanor punishable by a fine of not more than $2,000, or a jail sentence of not more than two (2) years, or by both such fine and jail sentence.

Sec. 2. In all cases where such actions are threatened, the State by and through its County or District Attorney, *may have injunctive relief as an additional sanction against all who are so threatening to commit such unlawful act or acts.* Where such actions are threatened in, on, or against any state agency, or property thereof, the Attorney General may institute such proceedings. All such injunctive proceedings shall be in the name of the

---

2. The state district court Temporary Restraining Order provided in part:
"* * * it is therefore ORDERED, ADJUDGED and DECREED that defendants be and they are hereby restrained from:
"(A) Coming onto any of the property owned and controlled by North Texas State University and from coming into any of the buildings or facilities on the campus of North Texas State University; (B) Obstructing the use, enjoyment, ingress or egress of the facilities and buildings of North Texas State University; (C) Committing assault or injuries upon any persons at any of the facilities or on any property of North Texas State University; (D) Damaging or injuring any property whatsoever of North Texas State University; (E) Urging other persons to commit an act calculated intending to produce injury or damage to property, person, or life of other people and insighting [sic] any person to participate in any riot or civil disturbance; (F) Participating in and insighting [sic] mob violence, rioting disturbance and urging other persons to participate in and incite violence, rioting and civil disturbance; (G) Disrupting the normal educational and social activity of North Texas State University or urging other persons to commit any act calculated intending to disrupt the normal educational and social activities of North Texas State University."

State of Texas and be guided by the rules of other injunction proceedings. No bond shall be required.

Acts 1967, 60th Leg., p. 800, ch. 333, emerg. eff. June 3, 1967.[3]

(Emphasis added)

Thus, even though the state court issued process which is normally denominated "civil," that court was in fact granting a remedy which the legislature of Texas had provided as part of a comprehensive scheme for the enforcement of the Texas Penal Code. The fact that the Texas State court was proceeding under a statute which authorizes injunctive relief in aid of the enforcement of the state's criminal laws brings this case squarely within the teachings of this Court in Palaio v. McAuliffe, supra. *Palaio* dealt with the propriety of federal intervention in a Georgia injunctive proceeding which was a civil technique for enforcing Georgia's criminal prohibition against the distribution of obscene materials. In affirming the denial of federal relief this Court stated that " . . . when federal anticipatory relief will significantly affect a state's enforcement—by whatever means—of its criminal laws, then such relief is barred by the strong policy of noninterference, unless the plaintiff can meet the heavy burden of proof that *Younger* imposes." 466 F.2d at 1233.

In issuing its permanent injunction [4] against Duke and Haylon, to enforce Article 2919j, Vernon's Ann.Civ.Stat. of Texas[5] and the regulations of North

---

3. Article 466a, Vernon's Ann.Penal Code of Texas was upheld as constitutional on its face in Locke v. Vance, S.D.Tex.1969, 307 F.Supp 439 (three judge district court). Thus, there can be no suggestion here that the lower court was dealing with a flagrantly and patently unconstitutional statute, a situation which the Supreme Court in *Younger* intimated might constitute an extraordinary circumstance justifying federal intervention without a preliminary showing of the bad faith and harassment necessary to constitute irreparable injury. 401 U.S. at 54–55, 91 S.Ct. at 755, 27 L.Ed.2d at 681.

4. The permanent injunction of the state district court provided in part:
   " * * * and the Court being of the opinion that whereas constitutional questions could be raised on appeal and no emergency existed to necessitate a ruling by the Court on any constitutional question, the Court made no ruling relative thereto; and the Court finding that a permanent injunction should issue, the same is hereby issued, and
   "It is ORDERED, ADJUDGED and DECREED that the Defendants David Haylon and Betty Ann Duke, be, and they are each hereby permanently enjoined from, and that each of them shall desist from coming onto or remaining on any of the property owned and controlled by North Texas State University and from coming into any of the buildings or facilities on the campus of North Texas State University for the purpose of addressing student assemblies or for any purpose without first complying with university regulations . . ."

5. Article 2919j, Vernon's Ann.Civ.Stat. of Texas, Repealed by Acts 1971, 62nd Leg., p. 3319, ch. 1024, art. 1, Sec. 3, eff. Sept. 1, 1971, provided in pertinent part:
   "Section 1. All of the general and criminal laws of the state are declared to be in full force and effect within the areas under the control and jurisdiction of the state institutions of higher education of this state.
   "Section 2. * * * Any person who violates any of the provisions of this Act or any rules or regulation of any governing board of any state institution of higher education of this state promulgated under the authority of this Act shall upon conviction thereof be punished by a fine of not more than $200.
   * * * * *
   "Section 4. It shall be unlawful for any person to trespass upon the grounds of any of the institutions of higher education of this state or to damage or deface any of the buildings, statutes, (sic), monuments, memorials, trees, shrubs, grasses or flowers on the grounds of any of the state institutions of higher education.
   * * * * *
   "Section 8. The judge of a municipal court or any justice of the peace of any city or county where property under the control and jurisdiction of state institutions of higher education of this state is located is each hereby separately vested with all jurisdiction necessary

Texas State University, the state trial court may have exceeded the authority conferred by Article 466a, Vernon's Ann.Penal Code of Texas. But this does not alter our conclusion that the principles of *Palaio* required the plaintiffs-appellees here to meet the pre-conditions of *Younger* before being entitled to invoke the aid of a federal court.

First, Article 2919j, Vernon's Ann. Civ.Stat. of Texas, Section 2, note 5, *supra,* contains a criminal penalty for the violation of the entire statute as well as for the violation of any rule or regulation validly promulgated under the statute, and thus injunctive enforcement of that statute and rules and regulations promulgated thereunder also constitutes injunctive enforcement of state criminal law.

Second, and of paramount importance, the state district court had already acquired jurisdiction over the controversy between the parties here by issuance of its preliminary injunction under the authority of Article 466a, Vernon's Ann. Penal Code of Texas, before any application was made to the federal district court. It is a time-tested rubric of our federalism that:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases." Taylor v. Taintor, 1873, 16 Wall. (83 U.S.) 366, 370, 21 L.Ed. 287, 290.

This principle is an integral part of the principles of federalism enunciated in *Younger.* Its application here dictates that since the state court acquired prior jurisdiction to enforce state criminal law by injunctive remedy, the nature of the state court's jurisdiction should be viewed as of the time that jurisdiction was assumed. Since the initial and continuing jurisdiction of the state court was to enforce through injunctive relief the criminal laws of the State of Texas, *Palaio,* requires this Court to determine whether or not plaintiffs here overcame the heavy burdens imposed upon them by *Younger*—demonstrated irreparable injury and an inadequate remedy at law in the state courts. Younger v. Harris, supra, 401 U.S. at 43–44, 91 S.Ct. at 750, 27 L.Ed.2d at 675.

As used in *Younger,* the concept of "irreparable injury" in the context of federal intervention in state proceedings is a term of art. First, the mere possibility that the state court order might tend to "chill" First Amendment rights is not in itself sufficient to justify federal intervention, Id. at 52–53, 91 S.Ct. at 754, 27 L.Ed.2d at 679–680. Second, Duke and Haylon were re-

---

to hear and determine criminal cases involving violations hereof where the punishment does not exceed a fine of $200.

"Section 9. The governing boards of the respective state institutions of higher education or their authorized representatives shall be vested with authority to refuse to allow persons having no legitimate business to enter upon any property under the control and jurisdiction of any state institution of higher education of this state and to eject any undesirable person from said property upon their refusal to leave peaceably upon request. Authority is given to require identification of any person upon the property of any of the state institutions of higher education.

"Section 10. Notwithstanding any of the provisions of this Act, all officers commissioned by the governing boards of the respective state institutions of higher education of this state may be authorized and empowered by the respective board to enforce rules and regulations promulgated by the Board. Nothing herein is intended to limit or restrict the authority of each institution to promulgate and enforce appropriate rules and regulations for the orderly conduct of the institution in carrying out its purposes and objectives or the right of separate jurisdiction relating to the conduct of its students and personnel."

quired only to assert their federal constitutional rights in a single state injunction proceeding, brought in apparent good faith, to enforce a facially constitutional state statute. As *Younger* emphasizes, "the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single prosecution." Id. at 47, 91 S.Ct. at 751, 27 L.Ed.2d at 676–677. Finally, even in the area of First Amendment rights, special circumstances such as bad faith and harassment—circumstances such as those present in Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22—must be present before a federal court may intervene in an ongoing state proceeding. Younger v. Harris, supra, 401 U.S. at 49–51, 91 S.Ct. at 753–754, 27 L.Ed.2d at 678–679, cf. Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182. There is no showing on this record of bad faith, harassment, or any other special circumstances which would justify federal intervention in this case.

We turn then to the adequacy of Duke and Haylon's remedies in the courts of Texas. In Texas, a permanent injunction is appealable as a final order, Article 2249, Vernon's Ann.Civ.Stat. of Texas, see 31 Tex.Jur.2d 326–327. Whatever may have been the impediment to appeal of the initial state temporary restraining order issued against Duke and Haylon,[6] the state district court had issued a final appealable permanent injunction two months before the federal court here issued its order restraining the enforcement of the state court order. Thus, the federal court here intruded itself into the processes of state litigation at a time when an adequate appellate remedy was available in the state courts. Such intrusion was improper as disruptive to the delicate balance between federal and state courts implicit in traditional concepts of comity and federalism. As representative of the dominant partner in the necessary interplay between the two sovereigns, federal courts must be especially sensitive to this balance and assiduous in its preservation. These goals were disregarded in this case.

The plaintiffs below made no effort to utilize orderly state court procedures before resort to the federal system. The refusal by the state trial court to consider Duke and Haylon's federal constitutional claims, see note 4, supra, did not alter the duty to pursue state remedies. Mere errors or mistakes by the state trial court are not special circumstances which justify federal intervention, cf. Lynch v. Snepp, supra, 472 F.2d at 775–776. Other courts have indicated that failure to pursue state appellate remedies is a factor to be considered in refusing federal intervention in an ongoing state civil proceeding, Lynch v. Snepp, supra, 472 F.2d at 775–776; cf. Cousins v. Wigoda, supra, 463 F.2d at 607–608. A party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting.[7]

---

6. Texas maintains a distinction between the appealability of a temporary restraining order and the appealability of a preliminary injunction similar to that found in the federal system, compare 31 Tex.Jur. 2d 325–326, 340, *with* Title 28, U.S.C. Sec. 1292(a)(1). See further Wright, Law of Federal Courts, Second Edition, Section 102, p. 458; Smith v. Grady, 5 Cir. 1969, 411 F.2d 181; Connell v. Dulien Steel Products, 5 Cir. 1957, 240 F.2d 414.

7. We do not have here a case where federal plaintiffs, prior to bringing their federal action, have in fact exhausted orderly state court trial and appellate procedures and have been refused consideration of their federal constitutional claims. Nor, of course do we have a case where having voluntarily submitted federal constitutional claims to state courts, disappointed litigants seek to relitigate the constitutional issue in a federal court. See Brown v. Chastain, 5 Cir. 1969, 416 F.2d 1012, cert. denied 1970, 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134.

Stripped to its essentials the situation here is that the plaintiffs below invoked the jurisdiction of a United States district court to review the judgment of a state trial court. In Rooker v. Fidelity Trust Co., 1923, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362, the Supreme Court expressly disapproved any such practice

"—If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. Elliott v. Peirsol, 1 Pet. 328, 340, 7 L.Ed. 164; Thompson v. Tolmie, 2 Pet. 157, 169, 7 L.Ed. 381; Voorhees v. Bank of United States, 10 Pet. 449, 474, 9 L.Ed. 490; Cornett v. Williams, 20 Wall. 226, 249, 22 L.Ed. 254; Ex parte Harding, 120 U.S. 782, 7 S.Ct. 780, 30 L.Ed. 824. Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. Judicial Code, § 237, as amended September 6, 1916, c. 448, § 2, 39 Stat. 726. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."

263 U.S. at 415–416, 44 S.Ct. at 150, 68 L.Ed. at 365. The way was open for Duke and Haylon to assert their federal claims through final decision by Texas courts and thereafter to seek review in the United States Supreme Court under the provisions of Title 28, U.S.C., Section 1257. The district court erred in not relegating them to this course. Cf. Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 1970, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L. Ed.2d 234, 246; Warriner v. Fink, 5 Cir. 1962, 307 F.2d 933, 936.

## CONCLUSION

As required by the principles of equity, comity, and federalism enunciated by Younger v. Harris, supra, and applied by this Court to state injunctions in aid of state criminal statutes in Palaio v. McAuliffe, supra, the court below should not have entertained this suit, but should have allowed the then active litigation to progress in orderly fashion through the state courts. The district court upon remand is directed to vacate its injunctive decree and dismiss the complaint.

Reversed and remanded.

GOLDBERG, Circuit Judge (specially concurring):

I concur in the result for the following reasons. Plaintiffs have neither alleged nor proven that available state procedures were inadequate to vindicate their federal constitutional rights and to prevent those rights from suffering irreparable harm. Instead of seeking state court review of the state court's injunction,[1] and without alleging that

1. The briefs filed on behalf of the State of Texas state the problem as follows:

"No effort was ever made by the complainants to seek any modification or review within the state court system. No appeal was taken. No application was made to the Texas Court of Civil Appeals or to the Texas Supreme Court to seek extraordinary relief. No application was made in the state trial court to try to obtain any alteration, clarification or expanded definitive ruling.

"  .  .  . 

"It is significant to note again at this point that counsel for complainants made no effort to continue *anything* in

state review would have been inadequate to prevent irreparable harm, plaintiffs did, in fact, as the majority points out, obtain in the federal district court what amounts to appellate review of the state court's action. I do not read the majority's opinion here, nor the opinion in Palaio v. McAuliffe,[2] nor even the opinions in the Younger v. Harris cases,[3] as prohibiting federal injunctive relief against state judicial proceedings where there is a showing that use of state procedures will be inadequate to protect federal rights, i.e., where irreparable harm

would otherwise occur.[4] Indeed, Mitchum v. Foster, decided after Younger v. Harris, expressly recognized the existence of such a remedy.[5]

Had these plaintiffs shown that the state procedures for review were inadequate to safeguard their rights, because of delay or for any other reason,[6] I believe federal relief would clearly have been warranted on the facts of this case, and I do not read the majority as saying otherwise. The Younger v. Harris sextet requires at least some showing that if available state procedures are fol-

Texas courts. Many further remedies, both legal and equitable, were still available in the trial court, the Texas Court of Civil Appeals (an intermediate appellate court with substantial equitable powers), and in the Texas Supreme Court (the court of last resort within the state and having broad equitable powers)."

2. 5 Cir. 1972, 466 F.2d 1230. The *Palaio* decision distinguished and did not question Hobbs v. Thompson, 5 Cir. 1971, 448 F.2d 456, where we stated that "exhaustion of state *judicial* remedies is not a prerequisite to the invocation of federal relief under section 1983 . . ." 448 F.2d at 461. The question in the instant case is not whether state remedies should have been exhausted as much as it is whether a federal injunction against state proceedings was *necessary* to protect federal rights.

3. The six companion cases were Younger v. Harris, 1971, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781; and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792.

4. *See generally* Fiss, Injunctions at 27–74.

5. 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705. Holding that 42 U.S.C. § 1983 is an "expressly authorized exception" to the Anti-Injunction Act, 28 U.S.C. § 2283, the Court stated:
"The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of

the people's federal rights—to protect the people from unconstitutional action under color of state law 'whether that action be executive, legislative or judicial.' Ex parte Virginia, 100 U.S. 339, 346, 25 L.Ed. 676, 679. In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress. And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. . . ."
407 U.S. at 242, 92 S.Ct. at 2162, 32 L.Ed.2d at 717.

6. The Court in Younger v. Harris, *supra* note 3, reproduced the language in Dombrowski v. Pfister, *infra* note 8, that suggests that delay in obtaining appellate disposition may be a sufficient "extraordinary circumstance" justifying federal intervention to prevent irreparable harm:
"But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss of or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury."
401 U.S. at 48–49, 91 S.Ct. at 753, *quoting from* Dombrowski v. Pfister, 380 U.S. at 485–486, 85 S.Ct. 1116. *See also* Sedler, *infra* note 9, at 40–42, 46–56.

lowed, *irreparable harm will not be prevented.* No such showing was made here.[7]

I have no doubt that the state injunction went far beyond the "chilling effect" present in Dombrowski v. Pfister[8] and that First Amendment expressional freedoms were unquestionably frozen here. See Note, 50 Texas L.Rev. 170 (1971). I also have no doubt that a federal remedy would have been appropriate had plaintiffs shown that a thaw could not have been obtained in state court that would have adequately prevented irreparable First Amendment harm from occurring. If that result is not to obtain, the February sextet will have become an orchestra of oppressive proportions.[9] The federal forum continues, as it must, to play a rightful role in the vindication of federal constitutional rights. The First Amendment is still audible,[10] but before the extraordinary remedy of federal intervention in state court proceedings may be invoked, there must be a showing that the federal action is necessary to safeguard those rights. Because such a showing is totally lacking here, I concur in this reversal.

7. Plaintiffs have not alleged or shown that they would encounter any delay whatsoever in obtaining state review of the state court's injunction.

8. 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22.

9. Much has already been written regarding the potential impact of the Younger v. Harris cases. *See, e. g.,* Sedler, Dombrowski in the Wake of Younger: The View from Without and Within, 1972 Wisc.L.Rev. 1; Note, 40 Cincinnati L. Rev. 613 (1971); Comment, Federal Injunctive Relief: What Remains after Younger v. Harris?, 60 Ky.L.J. 216 (1971); Comment, Federal Injunctive Relief Against State Court Proceedings: From Young to Younger, 32 La.L.Rev. 601 (1972); Note, 25 U.Miami L.Rev. 506 (1971); Comment, 17 N.Y.L.F. 652 (1971); Note, 1972 Wisc.L.Rev. 257. *Compare* Maraist, Federal Injunctive Relief Against State Court Proceedings: The Significance of Dombrowski, 48 Texas L.Rev. 535 (1970), *with* Maraist, Federal Intervention in State Criminal Proceedings: Dombrowski, Younger, and

Beyond, 50 Texas L.Rev. 1324 (1972). Compare Shevin, Federal Intrusion in State Court Proceedings, 1972 Utah L. Rev. 3, *with* Gilbert, Questions Unanswered by the February Sextet, 1972 Utah L.Rev. 14. *See also* Comment, Exceptions to the Anti-Injunction Statute, 21 Am.U.L.Rev. 395 (1972); Comment, Federal Courts: New Limitations on Injunctive Relief, 23 U.Fla.L.Rev. 416 (1971); Note, 18 Loyola L.Rev. 207 (1971); Comment, The Federal Anti-Injunction Statute, 8 Wake Forest L.Rev. 107 (1971); Comment, The Civil Rights Act of 1871 versus The Anti-Injunction Statute: The Need for a Federal Forum, 1971 Wash.U.L.Q. 625.

10. *See generally* Kennedy & Schoonover, Federal Declaratory & Injunctive Relief Under the Burger Court, 26 SW.L.J. 282 (1972); Note, Equity on the Campus: The Limits of Injunctive Regulation of University Protest, 80 Yale L.J. 987, 993–1027 (1971). *See, also* Note, Collateral Attack of Injunctions Restraining First Amendment Activity, 45 So.Cal.L.Rev. 1083 (1972).