**Edward N. CLAUGHTON, Plaintiff,**

v.

**Amy Steele DONNER, Defendant,**

**and**

**Beverly Mixson, Intervenor.**

**No. 91–0490–CIV.**

United States District Court,
S.D. Florida.

Aug. 30, 1991.

---

David Wieder, Miami, Fla., for plaintiff.

Roy Wood, Asst. County Atty., Dade County, Miami, Fla., for defendant.

## ORDER GRANTING DEFENDANT AND INTERVENOR MOTIONS TO DISMISS

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendant's and Intervenor's Motions to Dismiss. For the reasons detailed below, the Motions to Dismiss are GRANTED.

By a Complaint filed March 13, 1991, Plaintiff Edward N. Claughton, Jr. seeks injunctive relief and reasonable attorney fees arising under the Fifth and Fourteenth Amendments to the United States Constitution, and Title 42 United States Code Sections 1983 and 1988. The jurisdic-tion of this Court is predicated on Title 28 U.S.C. §§ 1343(a)(3) and 1331, and the Fifth and Fourteenth Amendments to the United States Constitution. This Court denied the Plaintiff's Petition for Temporary Restraining Order and Temporary Injunction by its Order of March 20, 1991.

The instant action arises from bitter and extended divorce/dissolution proceedings between Plaintiff Edward Claughton and Intervenor Beverly Mixson, formerly Beverly Claughton. Defendant Amy Steele Donner is the judge who heard the most recent phase of those proceedings in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. The action is brought against the Defendant personally and in her official capacity.

On or about November 16, 1989, Judge Amy Steele Donner began to hear the second trial in what is now a fifteen-year-old divorce/dissolution litigation between Plaintiff in the instant case and his former wife and Intervenor in the instant action, Beverly Mixson. According to the facts alleged in the Complaint, the first segment of this second trial lasted four days and addressed issues including the marriage history and marital assets. The second segment of the case was tried between January 2 and January 5, 1990. During the course of this portion of the trial, Ms. Mixson was apparently called to testify about her contribution to the marriage. Soon after initiating cross-examination, one of Plaintiff Claughton's attorneys became ill and was unable to continue. Plaintiff alleges that only that attorney, Richard H.M. Swann, was prepared to cross-examine Mrs. Mixson. Plaintiff then recites motions made by his attorneys on his behalf upon which Judge Donner ruled adversely to him. Plaintiff indicates that the motions all stemmed from the inability of Mr. Swann to continue with Ms. Mixson's cross-examination. Among other things, the trial judge entered the following rulings: (1) Judge Donner denied a motion to continue the case until Mr. Swann was able to return but instead granted a recess until the following day, *see* Complaint, para. 25; (2) Judge Donner denied a motion to permit

Plaintiff Claughton to enter his appearance in that case and represent himself in the proceedings, *see* Complaint para. 26; (3) by Order of January 3, 1991, Judge Donner permitted both parties in the divorce proceedings to receive $25,000 in escrowed funds from sale of the former marital home but expressly ruled that Plaintiff Claughton would not be permitted to receive further funds from the escrow fund, *see* Complaint, para. 32, 33; (4) by Order of January 29, 1991, Judge Donner held that Beverly Mixson was entitled to a fifty-fifty equitable distribution of marital assets, a ruling apparently contrary to that made in the first trial—the decision which had been reversed and remanded on appeal;[1] (5) Judge Donner denied Plaintiff's Motion for Recusal on March 7, 1991, *see* Complaint, para. 35; and (6) Judge Donner denied Plaintiff's Motion for a Rehearing filed February 8, 1991, *see* Complaint, para. 36.

Plaintiff further alleges that Judge Donner should have recused herself because Beverly Mixson's attorney had previously represented Judge Donner's family in legal matters and additionally is a personal friend, and because Beverly Mixson's brother was a senior partner in a law firm which had also represented the legal interests of the Donner family. *See* Complaint, para. 39, 40.

In the only Count in his complaint, seeking injunctive relief, Plaintiff alleges that the Defendant, presiding in her official capacity under color of state law, violated his civil rights. She allegedly did so by preventing him from exercising the right to full and fair cross-examination in the contribution phase of his divorce action. Plaintiff alleges that he has been denied his due process rights and will be denied property interests without due process of law. Complaint, para. 44, 45. In argument be-

fore this Court, counsel for Plaintiff conceded that the ultimate relief Plaintiff now seeks is an order directing that the state trial court judge be removed from the divorce proceedings and that the Dade Circuit Court be ordered to appoint another judge to hear that case. Plaintiff Claughton does not seek a remedy for alleged past deprivations of constitutional rights; he seeks only to eliminate the presiding judge from the case. In effect, the Complaint seeks federal court review of the state trial judge's denial of Claughton's motion to recuse that trial judge. And it seeks this remedy while appellate review of all orders of the state trial judge is underway in the state court system.

This Court conducted a hearing on Plaintiff's Petition for Temporary Injunction—based upon the sole Count in the same Complaint currently before this Court on a motion to dismiss—on March 18, 1991. Under controlling case law, Plaintiff needed to establish four elements in order for a court to enter an injunction. For such injunctive relief, there must exist:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974) (citations omitted). The Plaintiff has the burden of persuasion as to each of these elements. The failure to sustain this burden with regard to *any* one of the prerequisites is fatal to the motion. *See United States v. Jefferson County,* 720 F.2d 1511, 1519

---

**1.** In his Complaint, Plaintiff details the procedural history of the dissolution proceedings in the eight years before it reached Judge Donner. During that time, a first trial was held before Judge Richard Fuller. Applicant Mixson appealed the decision and the Third District Court of Appeal of Florida reversed and remanded for a new trial. Plaintiff Claughton unsuccessfully petitioned for a rehearing, and for review by the Florida Supreme Court.

This is not Plaintiff's first application in the federal court in the course of the divorce proceedings. On Aug. 22, 1986, Plaintiff Claughton filed a Petition for Removal to the United States District Court for the Southern District of Florida. On October 6, 1986, Judge Thomas E. Scott remanded the case to state court. On appeal, the Eleventh Circuit Court of Appeals affirmed that ruling. *See* Complaint, para. 8–16.

(11th Cir.1983); *Canal Authority,* 489 F.2d at 573.

In our Order of March 20, 1991, we held that:

> [b]ased on our review of the entire record as it has been presented to the court, we are constrained to conclude that Plaintiff's petition for a temporary restraining order and injunctive relief must be DENIED. The Plaintiff has failed to meet his burden as to each of the four requisite elements. First and foremost, we do not find that Plaintiff has shown a *substantial* likelihood of success on the merits and we see no threat that Plaintiff will suffer irreparable injury if injunctive relief is now denied. In addition, we do not find that the threatened injury to Plaintiff if the injunction is denied outweighs that to the Defendant if it is granted and, for the same reasons, we find that granting injunctive relief will disserve the public .interest.

Order, at 5.

In analyzing Plaintiff's likelihood of success on the merits, we noted that the relief requested—enjoining ongoing state court proceedings—was extraordinary in scope and required exceptional scrutiny. By federal statute, established constitutional case law, and longstanding federal policy, federal courts will enjoin state court proceedings only in narrowly defined and strictly limited instances. Under the *Anti–Injunction Act,* 28 U.S.C. § 2283, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.") In *Younger,* the Court addressed at length the policy rationale behind federal courts' reluctance to interfere with ongoing state court proceedings. One such reason is "the basic doctrine of equity jurisprudence that courts of

equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.,* 91 S.Ct. at 750. Additionally, the Court described such principles of comity as

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... [This federalism] concept represent[s] ... a system in which there is a sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.,* 91 S.Ct. at 750. Thus, as the Supreme Court made clear in *Younger,* when federal courts are asked to enjoin pending proceedings in state courts the normal course is to deny such injunctive relief. The instant action presents no reason to deviate from that long established and well-reasoned routine. That the instant action is brought under Title 42 Section 1983 does not in itself provide a sufficient basis.

The Fifth Circuit Court of Appeals described precisely the situation facing this Court in the instant action when it stated: "Stripped to its essentials, the situation here is that the plaintiffs below invoked the jurisdiction of a United States district court to review the judgment of a state trial court." *Duke v. Texas,* 477 F.2d 244, 253 (5th Cir.1973). The Court of Appeals went on to cite from *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923):

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise

of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until reversed or modified, it would be effective and conclusive adjudication.... Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character.

*Rooker*, 263 U.S. at 415–16, 44 S.Ct. at 150, 68 L.Ed. at 365. (Citations omitted).

 In the instant action, the state court trial has been completed, judgment has been entered, and the Plaintiff has sought appellate review in the state system. This suit is but a simultaneous if collateral federal appeal of the same action. This Court lacks subject matter jurisdiction in the instant action; a federal district court may not review a state court judgment even upon a claim that that judgment violates the United States Constitution. The remedy for such a violation is an appeal to the state appellate courts, whose decision may be reviewed by the United States Supreme Court. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir.1988) ("[Plaintiff] seeks to challenge collaterally the state agency and court proceedings that terminated her parental rights. Federal courts are not a forum for appealing state court decisions.") (citations omitted); *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir.1984) ("a plaintiff may not seek reversal of a state court judgment simply by casting his complaint in the form of a civil rights action.") (citations omitted), *cert. denied Hagerty v. Keller*, 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985). The Plaintiff will not suffer irreparable harm by continuing to litigate in the state courts. *See Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).

 Moreover, the Complaint fails to state a claim upon which relief can be granted. Plaintiff seeks injunctive relief and yet, as we made clear by our Order of March 20, 1991, denying such relief, plaintiff has an adequate remedy at law by state appellate court proceedings and state law provides for stay of lower court orders pending review. *See* Florida Rules of Appellate Procedure 9.310. Plaintiff's injury is not irreparable; an injury is irreparable only if it cannot be undone through monetary remedies. *See Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328 (5th Cir.1981); *Spiegel v. Houston*, 636 F.2d 997 (5th Cir.1981). Economic loss that can be calculated and compensated by monetary damage is ordinarily not held to be an irreparable injury. *See Colorado River Indian Tribes v. Parker*, 776 F.2d 846, 850 (9th Cir.1985) (economic loss is rarely irreparable for preliminary injunction purposes since money can be restored to the prevailing party after final judgment; thus preliminary injunction prohibiting enforcement of Indian tribe's ordinance regulating liquor sales was properly denied when only losses alleged by Plaintiff town were economic). Substantial litigation costs which cannot be recouped are not irreparable injuries. *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974); *Parma v. Levi*, 536 F.2d 133, 135 (6th Cir.1976).

 Plaintiff argues that the constitutional violation he alleges is itself an irreparable harm. He cites for support to *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir.1987); and *Albro v. County of Onandaga*, 627 F.Supp. 1280 (N.D.N.Y.1986). None of these cases reflect our view of this case. *Mitchell v. Cuomo, supra,* involved prison overcrowding. An injunction was sought under the Eighth Amendment to prevent closing a particular prison facility and transferring inmates to another already overcrowded facility. In *Ross v. Meese, supra,* plaintiff sought injunctive relief to bar the use of evidence allegedly seized in violation of Fourth Amendment rights against unreasonable search and seizure. The Fourth Circuit ruled in that case not that injunctive

relief ought to be granted, but simply that the district court had jurisdiction to render a declaratory judgment on the issue. *Ross,* 818 F.2d at 1134. *Albro v. County of Onandaga, supra,* also dealt with overcrowded jails. None of the cases cited by Plaintiff involved fact patterns even remotely similar to the allegations raised in the instant action, nor did the cases authorize entry of a federal injunction against ongoing state civil trial or appellate proceedings.

In sum, this Court lacks subject matter jurisdiction over the instant action, moreover Plaintiff fails to state a claim upon which relief may be granted. Accordingly, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Dismiss and the Intervenor's Motion to Dismiss are GRANTED.

DONE AND ORDERED.