Ruthena WILLIAMS et al., etc., Plaintiffs-Appellants,

v.

The Honorable C. P. RUBIERA et al., Defendants-Appellees.

No. 75–1383.

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1976.

Rehearing and Rehearing En Banc Denied Dec. 2, 1976.

Steven J. Wisotsky, Asst. Professor of Law, Ft. Lauderdale, Fla., for plaintiffs-appellants.

Robert L. Shevin, Atty. Gen., William L. Rogers, William Mark Grodnick, Asst. Attys. Gen., Miami, Fla., for defendants-appellees.

Before COLEMAN, RONEY and TJOF-LAT, Circuit Judges.

RONEY, Circuit Judge:

This suit sought a United States district court declaratory decree that state welfare

fraud defendants are constitutionally entitled to appointed counsel in cases in which the sentence is a fine, but not imprisonment. Such misdemeanor defendants are entitled to counsel under *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), if the sentence may be imprisonment. The alleged pattern and practice in Florida as to convicted welfare recipients, however, is to place them on probation and order them to pay back a portion of the defrauded funds each month. They are not imprisoned.

Without reaching the merits of the constitutional contentions, the district court dismissed the complaint for lack of standing of one plaintiff, and for failure to state a claim upon which relief could be granted as to the other two plaintiffs, holding that considerations of federal-state comity preclude a federal court's intervention in a pending state court prosecution absent a showing of bad faith, harassment, or other unusual circumstances that call for equitable relief. We affirm.

This suit was filed in federal district court against Judges of the County Court, Criminal Division in Dade County, Florida, and the State Attorney for the Eleventh Judicial Circuit. All three plaintiffs were recipients of public assistance funds and were defendants in criminal prosecutions for welfare fraud.

The prosecutions resulted from the State of Florida's effort to prune the welfare roles by prosecuting public assistance recipients who, on the basis of false representations, received more public assistance benefits than they were entitled to. Prosecutions were brought under the state's newly revised fraud statute, amended to include these types of welfare crimes. *See,* Fla. Stat. § 409.325 (1973). *See also* Fla.Stat. § 11.50 (1976 Supp.). The state's attorney was responsible for initiating such prosecutions. Beginning in 1973, this state-wide campaign proved immensely successful. The number of persons receiving public assistance was reduced from 331,172 in January 1973 to 271,940 by June 1974. Florida achieved the largest reduction of any large state in the number of people receiving welfare assistance.

All three plaintiffs, Ruthena Williams, Ernestine Lowe, and Annie Marie Brown, were prosecuted for welfare fraud. All three were unable to afford the assistance of privately retained counsel. Although requests for counsel were made, none were appointed.

■ Although plaintiff Ruthena Williams was convicted of welfare fraud, her conviction was reversed on appeal, and currently no state prosecution is pending against her. The district court ruled that Williams lacked standing to bring this suit. That court noted that the Williams' conviction for welfare fraud had been reversed on appeal after the state's attorney confessed error in that there was insufficient evidence to support the conviction. Nothing in the record indicates that Williams would be subject to any further prosecution. She has received no welfare assistance since February 1974. At oral argument plaintiff's counsel conceded that due to length of time the claims against Williams are no longer viable. Based on the foregoing the district court's dismissal of the Williams' claims is affirmed.

■ Prosecution of the case against plaintiff Ernestine Lowe was stayed pending the outcome of this suit. Subsequent to the filing of briefs on appeal, counsel notified the Court that the state criminal charges against Ernestine Lowe had been dismissed. The complaint filed with the district court made no assertion that Lowe was subject to any future welfare fraud prosecution. At oral argument counsel conceded that Lowe presented no viable claims on this appeal. We, therefore, affirm the dismissal of Lowe's complaint.

Although this case was filed as a class action no class was certified by the district court. Plaintiffs never filed a motion for certification. Therefore, only the claim of plaintiff Annie Marie Brown requires consideration here.

Brown pled not guilty to a charge of welfare fraud in June 1974. Thereafter,

she was induced by state agency representatives to change her plea to guilty. The state court ordered her to pay restitution at the rate of $50 a month to the Florida Division of Family Services. Subsequently the court vacated the guilty plea and granted a new trial. Scheduling of the new trial was deferred pending the outcome of this litigation, which was commenced on September 26, 1974. The prosecution is now pending.

In these circumstances, the district court ruled that the considerations of comity set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), barred federal court consideration of rights that can be vindicated in the state court prosecution. Harris had been indicted for violating the California Criminal Syndicalism Act and sued in federal court to enjoin that prosecution on grounds of the statute's unconstitutionality. The Supreme Court reversed the issuance of the injunction. The Court based its action on the longstanding policy disfavoring federal intervention in state court proceedings. *Cf. Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 370, 21 L.Ed. 287 (1872). In granting the injunction the federal court was directly involving itself in an ongoing state proceeding. The Supreme Court based its conclusion against federal interference in a state proceeding on the

> vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways.

401 U.S. at 44, 91 S.Ct. at 750. *See Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Boyle v. Landry,* 401 U.S. 77, 89 S.Ct. 442, 21 L.Ed.2d 436 (1971). More succinctly stated, "[t]his interdiction of federal interference in state judicial pro-

ceedings is based on federalism concepts of comity and respect for state functions . . . .." *Duke v. Texas,* 477 F.2d 244, 248 (5th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974) (citations omitted).

Plaintiff contends that her suit for declaratory relief will not foreclose a state prosecution as would an injunction. She makes no attempt to secure an injunction or declaratory relief against the enforcement of a state criminal statute on the grounds of its unconstitutionality as in *Younger.* Brown seeks only declaratory relief that to deny her the assistance of appointed counsel is unconstitutional.

■ But *Younger* did not turn on the proposition that a state statute was being challenged for its unconstitutionality. It rested on the reciprocal doctrine of federal-state comity, the fundamental policy against federal interference with state criminal prosecutions. *Kugler v. Helfant,* 421 U.S. 117, 123, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *see Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). If relief were granted in this case it would have the effect of a federal court telling a state court how to run an ongoing criminal prosecution, *i. e.,* whether it could constitutionally try the defendant without appointed counsel.

An injunction against a trial without appointed counsel would, of course, be direct federal interference in the state criminal prosecution. The issuance of only declaratory relief would not seem to alter the result. In *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Supreme Court held that those principles making federal injunctive relief impermissible would also apply to declaratory judgments.

> [O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid.

401 U.S. at 72, 91 S.Ct. at 767. The Court found two reasons for this conclusion: (1) a federal court may need to grant further

relief, such as a subsequent injunction, to effectuate the declaratory judgment; and (2) the declaratory judgment has practically the same impact on the state proceeding as a formal injunction. The district court here recognized the impact declaratory relief could have. To grant the requested relief would have the intrusive impact on the state proceeding that *Younger* and its progeny abhorred.

Plaintiff argues that *Younger v. Harris* has no application to this case since there is no opportunity to vindicate her constitutional rights in state court. The Supreme Court recognized that *Younger* "presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Nothing in the record, however, indicates that the Florida state courts would not be the proper forum to fairly decide plaintiff's constitutional claims. This was the position taken by the district court.

> Since the state court system would have the opportunity to rule on the right to counsel issue, comity compels the federal court not to intervene unless the plaintiff sustains the burden of proving bad faith, harassment, or other unusual circumstances.

This case does not present a situation like that in *Gibson v. Berryhill, supra,* in which the Supreme Court held that a state Board of Optometry was incompetent to adjudicate the issues pending before it by reason of the members' personal interest in the case. The obvious bias of the Board precluded the predicate of *Younger's* application, which otherwise would have prevented federal intervention in the state administrative proceeding to suspend and revoke licenses of individual optometrists.

More recently the Court in *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), rejected an argument that federal plaintiff Helfant could not receive a fair state court hearing. Helfant, a municipal court judge, sought a federal court injunction against indictment and prosecution for having given false testimony before the grand jury. He argued that the testimony had been coerced by a deputy attorney general and six members of the New Jersey Supreme Court, and therefore he could not receive a fair state hearing on his claims. The Supreme Court noted that four of the six justices allegedly involved in the coercion no longer held office. It also recognized that Helfant had the protection of the state's recusal provisions. Therefore the Court held the claimed inability to receive an adequate state hearing to be without foundation.

The need to allow state courts to adjudicate federal constitutional questions in cases pending before those tribunals is the workable result of comity and federalism. Unless a situation such as *Gibson* is present there is no reason to doubt that state courts can adequately entertain plaintiff's claims. Article VI of the United States Constitution "declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws and treaties." *Huffman v. Pursue, Ltd.,* 420 U.S. 592, at 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975). Thus the state courts share equivalently with the federal courts the responsibility of protecting constitutional guarantees. *See Schlesinger v. Councilman, supra,* at 755–756, 95 S.Ct. 1300. Absent facts to the contrary it must be presumed that this obligation will be fulfilled.

The failure of the state trial court to appoint counsel for the indigent defendant does not indicate that the constitutional right would not be vindicated at the state appellate level. Plaintiff never really presented her claim of counsel to the Florida appellate courts. This Court will not enter into valid state proceedings upon the presage of plaintiff that her claim will not be recognized in Florida courts. The concern of comity is not whether a state litigant would win or lose, but whether the claim to constitutional right would be fairly considered. This point was recognized by the Supreme Court in *Huffman v. Pursue, Ltd., supra,* at 608–611, 95 S.Ct. 1200.

[W]e are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious.

420 U.S. at 610, 95 S.Ct. at 1211. This Court echoed the thought in *Duke v. Texas, supra:*

The plaintiffs below made no effort to utilize orderly state court procedures before resort to the federal system. The refusal by the state trial court to consider Duke and Haylon's federal constitutional claims . . . did not alter the duty to pursue state remedies. * * * A party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting.

477 F.2d at 252 (footnote omitted).

Plaintiff's reliance on *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), is misplaced. *Pugh* involved the constitutional right to a pretrial hearing on probable cause. The Court stated that *Younger* would not apply because

[t]he injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution. The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.

420 U.S. at 108 n. 9, 95 S.Ct. at 860. An assertion of right to counsel at trial is aimed directly at the state proceeding. On a state appeal from conviction, Brown could assert denial of counsel as a ground for reversal. *See, e. g., Nelson v. Florida,* 274 So.2d 256 (4th D.C.A.Fla.1973); *Love v. Florida,* 270 So.2d 408 (4th D.C.A.Fla.1972); *Bowen v. Florida,* 236 So.2d 16 (2d D.C.A. Fla.1970); *Furman v. Florida,* 162 So.2d 308 (3d D.C.A.Fla.1964).

Finally, Brown argues that the right to counsel issue has been resolved against her position by the Florida Supreme Court. She cites *Rollins v. Florida,* 299 So.2d 586 (Fla.), *cert. denied,* 419 U.S. 1009, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). *Rollins,* however, was the Florida Supreme Court's revision of a prior opinion in a case concerning the state's procedure for alternatively sentencing to imprisonment an indigent defendant failing to pay a court imposed fine. *Rollins* arose prior to Fla.Crim.P.R. 3.111(b)(1), which provides that in misdemeanor violations, if the judge files a written statement that an indigent defendant will not be imprisoned if convicted, counsel need not be provided. *Rollins,* therefore, did not consider the Rule in effect at the time of Brown's case. *Rollins* dealt with the imprisonment of an indigent defendant who failed to pay a court ordered fine in lieu of an alternative prison sentence.

[T]here was also no imprisonment . . *for the misdemeanors* on which the appellants were tried. Each of the appellants was sentenced to a fine, with the condition that if the fine was not paid imprisonment for a certain number of days would result. The fines were not paid, the appellants were imprisoned; they subsequently established their indigency, and they were released from prison. We hold that this procedure did not violate *Argersinger.* We also hold that there was no violation of *Tate v. Short,* since the appellants were released once they established their indigency.

299 So.2d at 589 (emphasis in original). It seems unlikely that plaintiff's contentions have been foreclosed in the Florida Supreme Court. At oral argument before this Court, counsel argued that Brown's due process approach to right to counsel was a novel conception finding some support in the case law not previously dealt with directly. *See Argersinger v. Hamlin, supra,* 407 U.S. at 44, 92 S.Ct. 2006 (Powell, J., concurring). Of course, we express no view on the merits of plaintiff's contentions.

Plaintiff relies on a number of cases which, it is argued, would compel reversal of the district court's dismissal. These cases are distinguishable from the case *sub*

judice. *Cleaver v. Wilcox,* 499 F.2d 940 (9th Cir. 1974), involved a civil proceeding and the right to counsel at certain child dependency hearings. *Cleaver* found *Younger* not to be a bar for purposes of a declaratory judgment that indigents' right to counsel at dependency proceedings should be determined on a case-by-case basis. The Ninth Circuit in *Cleaver* did not have the advantage of the Supreme Court's subsequent decision, involving a civil proceeding analogous to a criminal proceeding, in *Huffman v. Pursue, Ltd., supra.* Without attempting to read *Huffman's* effect into the *Cleaver* result, we note that case presents a different set of circumstances from the case at bar. Federal intervention by way of declaratory relief was permitted in *Cleaver* because the court determined there to be no adequate state procedure to vindicate plaintiff's constitutional claims. The California state courts had repeatedly denied or refused to address the asserted constitutional contentions. 499 F.2d at 943–944. This is not the situation here.

*Conover v. Montemuro,* 477 F.2d 1073 (3d Cir. 1973), centered around proceedings pending before the Family Court Division of the Philadelphia Court of Common Pleas. The issue was whether juveniles were entitled to a preliminary hearing to determine probable cause before a delinquency hearing. The court indicated there was no opportunity to have the claim adjudicated at the state proceeding. *Id.* at 1081. The court held that *Younger* and its progeny would not bar relief. But the court pointed out that the issue of a preliminary hearing would not interfere with or terminate the adjudication functions of the Commonwealth's juvenile court system. *Id.* at 1082. *Conover,* as *Gerstein v. Pugh,* dealt with proceedings before the state criminal prosecution actually commenced.

Finally, *Gillilard v. Carson,* 348 F.Supp. 757 (M.D.Fla.1972), is also distinguishable. *Gillilard* is cited for the proposition that enjoining judges and prosecuting attorneys from proceeding to try indigent defendants without the right to counsel was "fully consistent with the views of comity and federalism expressed in . . . [*Younger*] and companion cases." *Id.* at 762. But the court in *Gillilard* found that one of the exceptions to the *Younger* bar was present.

> The Court concludes further that there is *imminent* danger that members of the class of indigent citizens facing prosecution in the Municipal Court will similarly have their clearly established constitutional rights violated and suffer irreparable harm by being unlawfully deprived of their personal liberty.

348 F.Supp. at 761–762 (emphasis supplied). Plaintiff before this Court does not assert any of these factors and in fact concedes that the *Younger* exceptions are not involved in this case.

The district court properly declined to consider the merits of Brown's constitutional claim under the federal-state comity guidelines of *Younger v. Harris* and subsequent decisions.

AFFIRMED.