## Burke JUSTICE, Jr., et al., Appellants

### v.

### SUPERIOR COURT OF the DISTRICT OF COLUMBIA, et al.

### No. 80–2580.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1981.

Decided April 20, 1984.

**950**

Joy Marie Leong, Los Angeles, Cal., for appellants. Margaret F. Ewing, Washington, D.C., was on the brief for appellants.

David P. Sutton, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, Washington, D.C. (at the time the brief was filed) and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, Mac-KINNON, Senior Circuit Judge, and NICH-

* Sitting by designation pursuant to 28 U.S.C.

OLS,* Circuit Judge for the United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

Dissenting opinion filed by Chief Judge ROBINSON.

MacKINNON, Senior Circuit Judge:

Appellants brought this action in federal district court against the Superior Court of the District of Columbia and two of its judges. Appellants allege that the conservatorship statute of the District of Columbia is unconstitutional on its face and as applied. The district court dismissed their complaint.

While appellants have been before the Superior Courts for the District of Columbia for a number of years, they have not pursued an appeal to the District of Columbia Court of Appeals, which thus has never had an opportunity to rule upon appellants' claims. In my opinion, those claims must be presented to the District of Columbia Court of Appeals before a federal district court can process this cause of action.

This case falls squarely within the scope of the *Pullman* abstention doctrine. *See Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). So long as the as-yet-unconstrued conservatorship statute is susceptible of a saving construction, the district court should abstain from entertaining appellants' constitutional claims. *See Boehning v. Indiana Employees Association,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975) (per curiam); *Kasap v. Moritz,* 613 F.2d 138 (6th Cir.1980). Accordingly, the decision of the district court is reversed and the court is instructed on remand to hold the matter in abeyance pending its resolution by the District of Columbia Court of Appeals. *Railroad Commission v. Pullman Co., supra,* 312 U.S. at 498, 61 S.Ct. at 644.

*Judgment accordingly.*

§ 291(a).

SPOTTSWOOD W. ROBINSON, III, Chief Judge, dissenting:

The Superior Court of the District of Columbia has adjudged each appellant incapable of caring for his property and has appointed conservators to manage their estates.[1] Both appellants charge that the District's conservatorship statute[2] is vague and overbroad, and that proceedings conducted under it are unconstitutionally infirm.[3] Both contend that the statute does not require adequate notice of the nature of conservatorship hearings, that it countenances perfunctory investigations by guardians ad litem, and that it thus paves the way for judicial action having serious and unnecessary consequences for affected parties.[4] Smith, an epileptic, alleges additionally that he was eventually institutionalized by a conservator without prior court approval, and that the court, when apprised thereof, did not require any sort of justification.[5] Justice avers that the statutory section enabling one under conservatorship to seek relief from it[6] does not comport with due process requirements of notice and opportunity to be heard, and thus deprives the court of information buttressing a plea for discharge.[7]

This appeal caps appellants' second trip to this court in their quest for an opportunity to lay the merits of their claims before

1. Complaint, *Justice v. Superior Court*, Civ. No. 79–1524 (D.D.C.) (filed June 13, 1979), ¶¶ 4–5, reproduced in Appendix (App.) 5–6.

2. D.C.Code §§ 21–1501 to 1507 (1981).

3. Appellants' claims are better viewed against the backdrop of their tragic personal histories, as derived from the various filings. See, respecting Justice, Complaint, *supra* note 1, ¶¶ 15–22, App. 8–10; Brief for Appellants at 5–7; Brief for Appellees at 2–3; and, respecting Smith, Complaint, *supra* note 1, ¶¶ 23–31, App. 10–12; Brief for Appellants at 7–8; Brief for Appellees at 3–4. Justice relates that, more than twenty years ago, he was declared, on petition of his wife, incapable of properly managing his affairs. He asserts that this determination was made without a formal hearing, without evidence, and without either his presence in court or representation by counsel—allegedly a result of insufficient notice of the proceeding. Justice states that the court's conclusion was premised solely on a finding by the Veterans Administration that he could not responsibly handle his finances. Justice acknowledges that a guardian ad litem was appointed to investigate his circumstances, but insists that the investigation was limited to a verification of the Veterans Administration's finding and the filing of a one-paragraph report with the court.

Smith's difficulties began in 1957, when he was committed to a mental hospital under then-existing District of Columbia statutes governing mental health care. He was released seven years later and returned to his family home—of which he is now sole owner—to live with his father and brother. Another seven years passed before, in 1971, his brother successfully petitioned for his appointment as Smith's conservator on the grounds that Smith could not manage his property. Allegedly, because of inadequate notice, Smith was not present when this action occurred. Smith states that the hearing was not evidentiary in nature, that no current medical evidence was proffered, and that the guardian ad litem appointed for him filed a report based simply on interviews with his father and brother, and never conferred with him or anyone responsible for his treatment. The court's order, we are also told, specifically relied on the 1957 determination of incompetence despite the fact that it was fourteen years out of date.

4. Complaint, *supra* note 1, ¶¶ 1, 32–49, App. 4–5, 12–16.

5. *Id.* ¶ 29, App. 11. When Smith's brother died, a successor conservator was appointed, allegedly by the same deficient process. Five weeks later, the new conservator—assertedly without prior court approval—had Smith institutionalized again. Brief for Appellants at 7–8.

6. D.C.Code § 21–1504 (1981).

7. After Justice had been under the conservatorship order for twelve years, the Veterans Administration reexamined his case and found him "competent to handle the full amount of his compensation." Complaint, *supra* note 1, ¶ 19, App. 9. Then, on his behalf, the Veterans Administration petitioned the court for discharge of the conservator, supporting the petition by a psychiatric report. *Id.* The court, however, in a brief order, denied the petition on the ground that the "medical record does not state what changes have been made in Burke Justice, Jr., to now make him competent," *id.* ¶ 20, App. 9 (quoting order), but did not invite additional evidence, and Justice's conservator took no further action in that regard. Another eleven years later, Justice remains the subject of the conservatorship, protesting that "there is no continuing medical or other reason for his conservatorship, and that his efforts to obtain its removal have been summarily rejected." Brief for Appellants at 6.

the District Court.[8] Their initial try in that forum was abruptly halted by a holding that the defendants were immune from their suit.[9] Appellants took their first appeal, and this court reversed and remanded "for consideration of the possible application of the principles of comity."[10] That what the court had principally in mind was the bearing of *Younger v. Harris*[11] was evident from citation of that case and several of its progeny[12] in the order directing remand.[13] The parties then returned to the

**8.** Appellants, on behalf of themselves and all others similarly situated, initiated this litigation in the District Court against the Superior Court and two of its judges. The plaintiff class was defined as "all persons who are now under a conservatorship pursuant to the District of Columbia conservator statute and all persons who may be subject to application of the conservator statute." Complaint, *supra* note 1, ¶ 7, App. 6. The complaint states that "at present, approximately 1,500 conservatorships are in effect pursuant to that statute." *Id.* Appellants request a declaratory judgment that the statute is unconstitutional both on its face and as applied, and a mandatory injunction ordering constitutionally-adequate hearings for those subject to a conservatorship and directing the Superior Court to promulgate rules of procedure assuring the constitutionality of future conservatorship proceedings. *Id.* ¶ 52, App. 18. Appellants do not seek damages, or automatic release from their own conservatorships. Brief for Appellants at 11.

**9.** *Justice v. Superior Court, supra* note 1 (June 28, 1979) (order), App. 19. Appellants thereupon brought another action in the Superior Court, this time against the District of Columbia, for the same relief previously requested in the District Court. That suit also was dismissed, on the theory that the District of Columbia did not administer the conservatorship statute and had no responsibilities thereunder. Brief for Appellants at 4; Brief for Appellees at 7. From this ruling, appellants took an appeal to the District of Columbia Court of Appeals, but subsequently elected not to pursue it, and the appeal was dismissed on their motion. Brief for Appellees at 7 & Exhibit D.

**10.** *Justice v. Superior Court*, No. 79–1818 (D.C. Cir. June 24, 1980) (judgment), App. 20.

**11.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**12.** The cases additionally cited were *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); and *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

**13.** *Justice v. Superior Court, supra* note 10. The classic *Younger* case involves a state criminal proceeding against one who in response brings a federal-court action claiming that the state law underlying the criminal charge is unconstitutional, and seeking an injunction against further prosecution. See Bartels, *Avoiding a Comity of Errors: A Model for Adjudicating Federal Civil Rights Suits that "Interfere" with State Civil Proceedings*, 29 Stan.L.Rev. 29, 31–34 (1976); Wells, *The Role of Comity in the Law of Federal Courts*, 60 N.C.L.Rev. 59, 64 (1981). *Younger* held that the federal court must decline to hear the case; enjoining an ongoing state criminal prosecution would be too damaging to the concerns of federalism when the federal right at stake could be asserted as a defense in the state proceeding. *Younger v. Harris, supra* note 11, 401 U.S. at 41, 91 S.Ct. at 749, 27 L.Ed.2d at 674. See also Bartels, *supra*, at 31–34.

Although that is the paradigm *Younger* situation, the doctrine has been expanded considerably. It now extends beyond criminal prosecutions to certain types of civil cases—of which a state-instituted protective child-custody suit would be an example—implicating an especially strong state interest. *Moore v. Sims, supra* note 12, 442 U.S. at 423, 99 S.Ct. at 2377, 60 L.Ed.2d at 1003; *Trainor v. Hernandez, supra* note 12, 431 U.S. at 444, 97 S.Ct. at 1918, 52 L.Ed.2d at 496; *Juidice v. Vail, supra* note 12, 430 U.S. at 337, 97 S.Ct. at 1218, 51 L.Ed.2d at 385; *Huffman v. Pursue, Ltd., supra* note 12, 420 U.S. at 603–605, 95 S.Ct. at 1207–1209, 43 L.Ed.2d at 491–493. See generally Bartels, *supra*, at 44–66. While *Younger* originally spoke to a federal action initiated after the onset of the state prosecution, it now applies even though the state prosecution commenced after the federal suit, so long as there have not been substantial proceedings on the merits in the federal court. *Hicks v. Miranda*, 422 U.S. 332, 349–350, 95 S.Ct. 2281, 2291–2292, 45 L.Ed.2d 223, 238–239 (1975). See generally Bartels, *supra*, at 37–42; Wells, *supra*, at 69–75. *Younger* also now requires that available state appellate remedies be pursued. *Huffman v. Pursue, Ltd., supra* note 12, 420 U.S. at 608–609, 95 S.Ct. at 1210–1211, 43 L.Ed.2d at 494–495. See generally Wells, *supra*, at 71–72.

The *Younger* doctrine, when otherwise applicable, comes into play whenever the federal plaintiff has an opportunity to raise the federal claim—defensively or otherwise—in the pending state proceeding. *Moore v. Sims, supra* note 12, 442 U.S. at 425–426 & n. 9, 430 & n. 12, 99 S.Ct. at 2378–2379 & n. 9, 2381 & n. 12, 60 L.Ed.2d at 1004–1005 & n. 9, 1007 & n. 12. See generally Wells, *supra*, at 72. *Younger* also intercepts suits for declaratory relief as well as

District Court, there litigated the *Younger* issue, and, after that court vied in favor of *Younger* abstention and dismissed the action,[14] appellants journeyed back here. The case was briefed, argued and submitted to us solely on the applicability of *Younger*, and thus the stage was set for us to settle that question.

Now, after all of that single-purposed activity, my colleagues suddenly take another tack. They do not address *Younger* at all; instead, they focus exclusively upon a new and very different subject. On the premise that "[t]his case falls squarely within the scope of the ... abstention doctrine" formulated in *Railroad Commission of Texas v. Pullman Co.*,[15] they reverse the District Court's judgment without pausing to determine whether in terms of *Younger* it is right or wrong, and again

remand the case, this time with instructions to hold all proceedings in abeyance pending interpretation of the conservatorship statute by the District of Columbia Court of Appeals.[16]

This disposition hinges on the view of my brethren that "[s]o long as the as-yet-unconstrued conservatorship statute is susceptible of a saving construction, the district court should abstain from entertaining appellants' constitutional claims." [17] I cannot agree, however, either that the *Younger* question should be pretermitted or that the occasion for a *Pullman* application is yet evident. The *Younger* issue is ripe for decision,[18] and its resolution conceivably could bring this litigation to an end.[19] On the other hand, *Pullman* abstention, even if in any event proper,[20] leaves *Younger*

---

those for an injunction. *Samuels v. Mackell,* 401 U.S. 66, 70–72, 91 S.Ct. 764, 766–768, 27 L.Ed.2d 688, 692–693 (1971). The Supreme Court has held, however, that a declaratory judgment is appropriate when a state prosecution is merely threatened, though not when it is pending. *Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 1223–1224, 39 L.Ed.2d 505, 524 (1974).

**14.** *Justice v. Superior Court, supra* note 1 (Nov. 25, 1980) (memorandum and order), App. 21–24.

**15.** 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**16.** Majority Opinion (Maj.Op.). *Pullman* abstention becomes proper when a civil action in a federal court poses a constitutional question that might be avoided by an appropriate construction of unsettled state law by the state judiciary. *Railroad Comm'n v. Pullman Co., supra* note 15, 312 U.S. at 498, 61 S.Ct. at 644, 85 L.Ed. at 973. See also, *e.g., Babbitt v. United Farmworkers Nat'l Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895, 911 (1979); *Boehning v. Indiana Employees Ass'n,* 423 U.S. 6, 7, 96 S.Ct. 168, 169, 46 L.Ed.2d 148, 150 (1975); *Procunier v. Martinez,* 416 U.S. 396, 403, 94 S.Ct. 1800, 1806–1807, 40 L.Ed.2d 224, 234–235 (1974); *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 306, 38 L.Ed.2d 260, 265 (1973). The federal suit is to be held in abeyance pending resolution of the state-law problem in the state courts. *Railroad Comm'n v. Pullman Co., supra,* 312 U.S. at 501–502, 61 S.Ct. at 645–646, 85 L.Ed. at 975. *Pullman* abstention thus "serves the policy of comity ... and it spares the federal courts of unnecessary constitutional adjudica-

tion." *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152, 1158 (1959).

**17.** Maj.Op. at 2.

**18.** The threshold question would be whether the *Younger* abstention doctrine applies to federal courts in the District of Columbia. See *Pernell v. Southall Realty,* 416 U.S. 363, 368 n. 4, 94 S.Ct. 1723, 1726 n. 4, 40 L.Ed.2d 198, 205 n. 4 (1974); *Family Division Trial Lawyers v. Moultrie,* 725 F.2d 695, 701 n. 7 (D.C.Cir.1984); *Kaplan v. Hess,* 224 U.S.App.D.C. 281, 284 n. 2, 694 F.2d 847, 850 n. 2 (1982); *Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 50–54, 478 F.2d 938, 960–964, *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); see *Campbell v. McGruder,* 188 U.S.App.D.C. 258, 262, 580 F.2d 521, 525 (1978).

**19.** *Younger,* when applicable, requires dismissal of the federal action. See *Moore v. Sims, supra* note 12, 442 U.S. at 435, 99 S.Ct. at 2383, 60 L.Ed.2d at 1011; *Diaz v. Stathis,* 576 F.2d 9, 11–12 (1st Cir.1978); *Williams v. Rubiera,* 539 F.2d 470, 476 (5th Cir.1976), *cert. denied sub nom. Brown v. Rubiera,* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977); *Gardner v. Luckey,* 500 F.2d 712, 714–715 (5th Cir.1974), *cert. denied,* 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975); *Bonner v. Circuit Court of St. Louis,* 526 F.2d 1331, 1337–1338 (8th Cir.1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976); *Mudd v. Busse,* 437 F.Supp. 505, 518 (N.D.Ind.1977), *aff'd,* 582 F.2d 1283 (7th Cir. 1978), *cert. denied,* 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1979).

**20.** The extent to which *Pullman* is to be given operation in the District of Columbia is an open question. See *Silverman v. Barry,* 727 F.2d

for possible revisitation in this case on another day.[21] In sum, I would face up to *Younger* now, and only if it were determined that *Younger* is inapposite would I give any consideration to *Pullman.*

1121, 1123 n. 4 (D.C.Cir.1984); *Spivey v. Barry,* 214 U.S.App.D.C. 404, 411, 665 F.2d 1222, 1229 (1981); see *Campbell v. McGruder, supra* note 18, 188 U.S.App.D.C. at 262, 580 F.2d at 525.

**21.** An application of *Pullman* results, not in dismissal of the federal action, but in its retention pending resolution of the state-law issues. *Railroad Comm'n v. Pullman, supra* note 15, 312 U.S. at 501–502, 61 S.Ct. at 645–646, 85 L.Ed. at 975; see *American Trial Lawyers Ass'n v. New Jersey Supreme Court,* 409 U.S. 467, 469, 93 S.Ct. 627, 629, 34 L.Ed.2d 651, 653 (1973); *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 512–513, 92 S.Ct. 1749, 1758, 32 L.Ed.2d 257, 270 (1972); *Harrison v. NAACP, supra* note 16, 360 U.S. at 173, 79 S.Ct. at 1033, 3 L.Ed.2d at 1158 (*Pullman*-type abstention "does not ... involve the abdication of federal jurisdiction, but only the postponement of its exercise"); *Coleman v. Ginsberg,* 428 F.2d 767, 770 (2d Cir.1970); *Blume v. City of Deland,* 358 F.2d 698, 699 (5th Cir.1966); *Muskegon Theatres, Inc. v. City of Muskegon,* 507 F.2d 199, 205 (6th Cir.1974).