**C. E. SMITH, individually and on behalf of all others similarly situated, Appellant,**

v.

**Paul E. GRADY, Mayor of the City of Hattiesburg, et al., Appellees.**

**No. 25351.**

United States Court of Appeals
Fifth Circuit.

May 15, 1969.

182

Denison Ray, L. A. Aschenbrenner, Elliott C. Lichtman, Lawrence D. Ross, Jackson, Miss., for appellant.

Frank D. Montague, Jr., Hattiesburg, Miss., Will S. Wells, Asst. Atty. Gen., Jackson, Miss., for appellees.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of Court of Claims.*

COLEMAN, Circuit Judge.

In a class action alleging infringement of First Amendment rights as to picketing in support of an economic boycott against certain stores in Hattiesburg, Mississippi, appellant was granted a temporary injunction by the District Court for the Southern District of Mississippi. Because all the relief prayed for was not granted this appeal was perfected. Treating the matter purely within the context of a temporary injunction, which is all that we have before us, we affirm the action of the court below, with one modification, and remand the case.

On July 24, 1967, a class action complaint was filed under 42 U.S.C. §§ 1981, 1983, and 1985, for a temporary restraining order, a preliminary and a permanent injunction, and other equitable relief, to enjoin the deprivation, under color of law, of plaintiffs' rights, privileges and immunities guaranteed by the Constitution and laws of the United States.

The complaint alleged that on July 18, 1967, "plaintiff and his class [the Hattiesburg Chapter of the N.A.A.C.P.] voted to conduct an economic boycott of the downtown businesses of the City [Hattiesburg], of certain public services of the City, and of certain other merchants. Plaintiff and plaintiff's class have publicized the boycott by an orderly march along public streets on July 18, peaceful picketing of several stores and by word of mouth, all of which has been done in the public streets and in public places of the City".

This, alleged the complaint, had resulted in the arrest of numerous members of the class on July 21 and July 22, 1967, without any basis in fact and solely for the purpose of punishing the participants for and deterring them from "the exercise of their Constitutional rights to peacefully protest discrimination and to conduct a boycott which seeks to publicize, and to remedy, the denial of the equal civil rights in the City and in Forrest County".

The complaint then described in considerable detail the allegedly unlawful arrests and concluded by praying for relief as above mentioned.

For two days the District Court heard evidence directed solely to the issue of whether a preliminary injunction should issue. Some idea of the extent of the hearing is to be found in the fact that the reported testimony comprises 593 typewritten pages.

In an eight page written opinion, reserving until a later date formal findings of fact and a written opinion, the Court, inter alia, temporarily decreed as follows:

"(1) The defendants shall respect the right of the plaintiffs to peaceful picketing as hereinafter defined. These plaintiffs shall have the right to air their differences and express their views publicly, whether popular or not, within the full sweep of the First Amendment of the Constitution of the United States, but that right shall not overrun or invade the rights of others. The right of peaceable assemblage must not be abridged or infringed, but peaceful picketing must be properly understood and not abused. Wellwishers of pickets should not congregate on, or near private businesses being picketed, or violate any rule against peaceful picketing, or interfere with pedestrian or vehicular ingress or egress to or parking at any business.

"(2) The plaintiffs shall have and enjoy the right to peaceful picketing of any business or businesses which they desire to picket in the proper exercise of their First Amendment

---

* Sitting by designation as a member of this panel.

rights. Peaceful picketing shall consist of not more than six persons operating (back and forth) in one straight line at each site, single file. They may carry banners or placards bearing any inscription of their choice, but shall not utter any sounds, or make any signs or gestures; and, certainly, shall never at any time issue, or utter any threats against anybody for patronizing any lawful business. The pickets shall walk on public property, five or six feet apart at all times and shall not interfere with ingress or egress of pedestrian or vehicular traffic to the establishment or parking thereat. Such conduct when conformed hereto will be treated and considered by this Court as peaceful picketing and within the protection of the order of this Court and not in violation of any law."

The above order was filed August 14, 1967; notice of appeal was given on August 15; and appeal bond was filed August 16. On August 17, Judge Bryan Simpson, of this Court, heard an application for a temporary restraining order pending submission of a Motion for Injunction Pending Appeal to an interim panel of this Court. On August 23, 1967, Judge Simpson filed a written opinion denying relief. After reciting the history of the litigation, Judge Simpson wrote [which we consider well worth copying here] as follows:

"Beginning with the commencement of the boycott and picketing on July 18, 1967, and up to the time of the institution of the suit below, a number of arrests were made by the City Police of Hattiesburg in connection therewith for violation of two Mississippi statutes: Miss.Code Ann. §§ 2087.7 and 2089.5 (1942). Both sections describe misdemeanors punishable by fine of not more than $500.00, or by imprisonment for not more than six months, or by both such fine and imprisonment. Section 2087.7 prohibits disorderly conduct in or on the premises of another preventing or interfering with the owner-operator of places of business or with customers or with prospective customers or other members of the public then on such premises. Section 2089.5 proscribes disturbances of the public peace or the peace of others by violent, loud, insulting, profane, indecent, offensive or boisterous conduct or language, or by intimidation or seeking to intimidate any other person or persons, or by conduct calculated to provoke a breach of the peace or by conduct which may lead to a breach of the peace. *No attack was made on the constitutionality of either statute.* [emphasis added]

"Following the institution of the suit below and prior to the hearing on the Motion for Preliminary Injunction which was held on August 7, 8, 9 and 10, additional arrests ensued. A minimal number of further arrests have taken place since entry of Judge Cox's order. In all, the arrests total 109. Of these cases a number have been disposed of: some by dismissal, some by 'passing to the files,' (equivalent to a nolle prosequi), three or four to a judgment of guilty and imposition of sentence, and three or four to discharge upon a finding of not guilty.

"The arrests fall into two main classes: (1) those made by police officers for misdemeanors allegedly committed in their presence, and (2) those made upon sworn affidavits of private citizens. Remaining undisposed of are 78 cases, 19 in category (1) above and 59 in (2) above. The 59 cases on private affidavit have all been indefinitely stayed by the City pending final disposition of this case by Judge Cox.

"Judge Cox's order is explicit in protecting the rights of the class which Plaintiff seeks to represent to continue peaceful picketing, limited to six pickets at each site, marching six feet apart, carrying banners or placards, but not uttering any sounds or making any signs or gestures, not issuing or uttering any threats against anybody for patronizing any lawful business, and not interfering with ingress or egress of pedestrians or

vehicular traffic to the establishment or parking thereat. The order instructs the police to continue to make arrests for violation of the law and directs the Police Justice to promptly hear and decide all pending cases on his docket, as well as any future charges filed in his court against members of Plaintiff's class not in violation of the order.

"Involved in the relief sought pending appeal is trial and disposition of the 19 police arrests mentioned above, the banning of future arrests pending disposition of the appeal, and a requirement of change in bail practices.

"Assuming without deciding that proceedings under 42 U.S.C. § 1983 are an exception to the ban of 28 U.S.C. § 2283 against the stay of state court proceedings (see Dombrowski v. Pfiester, 380 U.S. 479 at page 484, 85 S.Ct. 1116, 14 L.Ed.2d 22, and footnote 2 on the same page of the majority opinion, and the comment thereon in Mr. Justice Harlan's dissent at page 502 of 380 U.S., 1129 of 85 S.Ct.) and further assuming without deciding that Dr. Smith, *the sole Plaintiff, who has not so far engaged in picketing or been arrested,* [emphasis added] has the standing to invoke § 1983 on behalf of the class which he purports to represent (see in this connection Judge Wisdom's dissent in the Dombrowski case below, 227 F.Supp. 556, at page 582), no showing of irreparable injury is made as to the 19 persons under arrest and scheduled for trial.

"Further, no sufficient showing of the likelihood of irreparable injury is made with respect to prospective arrests under the limited permission to continue to arrest and prosecute as outlined in Judge Cox's order.

"Bail bond originally was uniformly fixed at $500.00 per case with respect to these misdemeanor arrests. On the application made for reduction, the Police Justice directed that in the future bail be required in the amount of $300.00. Further complaint is made that the usual practice of requiring two sureties was increased to a requirement of three sureties, and that one property owner was limited to becoming surety on only two bonds, regardless of the amount of real estate owned as shown by his qualifying affidavit. Mississippi law apparently permits the requirement of two or more sureties. The explanation given by counsel for the Appellees was that in view of the increased number of arrests and the lack of time and personnel to check the accuracy of sureties' affidavits the requirements were increased in the particulars noted. At any rate, it appears that bail has been furnished promptly in all arrests so far made, and the necessity for a requirement of a relaxation of these safeguards is not made to appear. In this connection it should be emphasized that the only application made to the Police Justice for reduction of bond requirements was promptly granted. For aught that appears, application for further relaxation of bail requirements would be successful. Under Mississippi law there is an additional safeguard against unreasonable bail requirements by application to the Circuit Court, the state court of general jurisdiction, for habeas corpus.

"I reach the conclusion that no sufficient showing has been made to warrant me, as a single judge, in granting interim relief pending presentation to and decision by the regular panel of the Motion for Injunction Pending Appeal. Accordingly, the application to me for such relief is ordered denied.

"Entered at Jacksonville, Florida, this August 18, 1967.

> /s/ Bryan Simpson
> U. S. Circuit Judge"

On August 21, 1967, the interim panel, agreeably to the usual procedure of this Court in such cases, considered [and denied] the Motion for Injunction Pending Appeal. This panel was composed of Judges Tuttle, Jones, and Simpson. Judge Tuttle concurred in the denial because of the absence of any attack upon

the constitutionality of the applicable statutes of the State of Mississippi.

Thus, prior to submission to this panel, three Judges of this Court have had a look at this preliminary injunction and have declined to expand it pending appeal. Additionally, Judge Simpson stated his views in writing as above set forth.

■ We agree that we have jurisdiction of this appeal under 28 U.S.C. § 1292(a) (1).[1] See Connell v. Dulien Steel Products, 5 Cir., 1957, 240 F.2d 414. In that case, citing Peters v. Standard Oil Co., of Texas, 5 Cir., 1949, 174 F.2d 162, the Court expressly held:

"A preliminary injunction issued in accordance with Rule 65(a) is appealable as an interlocutory decision under 28 U.S.C.A. § 1292."

■ Of course, temporary restraining orders are not appealable, Chandler v. Garrison, 5 Cir., 1967, 394 F.2d 828; Ross v. Evans, 5 Cir., 1963, 325 F.2d 160.

■ In deciding the jurisdictional question, this Court will look beyond terminology to the actual content, purport, and effect of that which may otherwise be described as a temporary restraining order or as a preliminary injunction, Connell v. Dulien Steel Products, supra; Dilworth v. Riner, 5 Cir., 1965, 343 F.2d 226; Fox v. City of West Palm Beach, 5 Cir., 1967, 383 F.2d 189.

This case was heard as for a preliminary injunction. In its order of August 12, 1967, the District Court specifically directed that said order "be considered by all persons as an injunction * * *". The parties were clearly enjoined and until such time as a final order should be entered. This, therefore, was a preliminary injunction, and appealable.

What, then is the standard of review?

■ The law is clear. The action of the District Court is not to be disturbed unless there was an abuse of discretion in declining the additional relief sought by the complainant, Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Burnside v. Byars, 5 Cir., 1966, 363 F.2d 744, 749; Virginia Airmotive Limited v. Canair Corp., 4 Cir., 1968, 393 F.2d 126. As a matter of constitutional principle, we are, of course, to be more vigilant for the possibility of abuse in a case involving First Amendment rights but we must also remember that those rights are susceptible to abuse, Blackwell v. Issaquena County Board of Education, 5 Cir., 1966, 363 F.2d 749; Burnside v. Byars, supra.

The record reveals that the members of the class began the boycott because three grocery stores owned by white people but located in predominantly Negro neighborhoods declined to replace white cashiers with those of the Negro race. Some activity was also directed against the Fine Brothers-Matison Company, a large department store located in downtown Hattiesburg.

■ Dr. Smith, the complainant, who filed the class action, and who was President of the Hattiesburg Chapter of the N.A.A.C.P., testified that he did not personally participate in the picketing and was never arrested. This raises some doubt of his standing to represent the class. Since, however, he personally participated in its direction, at the scene, we have decided to resolve the issue of standing in his favor. He testified that he instructed the pickets to remain quiet, to march peacefully and quietly, and to space themselves sufficiently far apart so as not to prevent passage in or out of the stores. The pickets were told that they should not intimidate people,

2. 28 U.S.C. § 1292(a) (1). Interlocutory decisions.

(a) The courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court:

should not talk to people going into the stores, and to pay no attention to those passing by. The great majority of the pickets were teenagers because their parents were employed and, for that reason, could not participate. In many instances there would be only one adult on the picket line.

The record is replete with testimony that the pickets did not obey Dr. Smith's instructions. They sang freedom songs so loudly that they could be heard three blocks away. They chanted and clapped their hands. Sometimes as many as thirty-five would be on a picket line at a particular store, although the average seems to have been about fifteen. Most of the witnesses testified that the pickets were spaced about three feet apart. When one recalls that a standard exterior door is that width, one gets a pretty good impression of how difficult it would have been to get between these moving doors and thus in or out of the stores. At Fine Brothers-Matison, on Main Street, the sidewalk was wide enough for six people to walk abreast. Several times those participating in the boycott would walk back and forth in front of the store, four abreast.

There was testimony that some of the singing included words of a generally threatening nature—some specifically directed toward a store owner indicated by name, and some including the police as targets.

On one occasion a picket called a woman customer an s. o. b. [initials substituted for the words]. It has been the law of Mississippi since 1857 [§ 2525, Code of 1942] that insulting words may be shown in excuse or justification for an assault or an assault and battery.

Refraining from more detailed particularization, it is obvious that the District Judge was confronted with considerably more than peaceful picketing.

Indeed, the pickets clearly violated many of the instructions of their sponsor, Dr. Smith. When the District Court, in its preliminary injunction, limited the pickets to not more than six persons in a straight line, carrying banners or placards bearing any inscription of their choice, walking five or six feet apart, not interfering with the ingress or egress of pedestrians or vehicular traffic to the establishment or parking thereat, it was substantially reiterating the instructions given by Dr. Smith in the first place.

■■ Any kind of boycott is unlawful if executed with force or violence or threats, but we do not have here a case in which the Court enjoined all picketing for having spawned or accompanied such tactics. The preliminary injunction made no effort to interfere with picketing in a peaceful and orderly manner. On the contrary, it sought to insure its existence in an explosive situation. The record conclusively shows that restrictions in favor of peaceful picketing were necessitated by the conduct of at least some of the pickets. In the words of Mr. Justice Frankfurter, speaking for a unanimous Court, in Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1949) the District Judge was dealing with "the specific situation", 339 U.S. at 465, 70 S. Ct. 718.

We quote further from the opinion in *Hughes*, supra:

"But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication. The loyalties and responses evoked and exacted by picket lines are unlike those flowing from appeals by printed word.

\* \* \* \* \* \*

"However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to ef-

fectuate gives ground for its disallowance.

\* \* \* \* \* \*

"The constitutional boundary line between the competing interests of society involved in the use of picketing cannot be established by general phrases. Picketing when not in numbers that of themselves carry a threat of violence may be a lawful means to a lawful end."

It is to be noted that the picketing in Amalgamated Food Employees, etc. v. Logan Valley Plaza, 391 U.S. 308, 88 S. Ct. 1601, 20 L.Ed.2d 603 (1968) "was peaceful at all times and unaccompanied by either threats or violence", 391 U.S. at 312, 88 S.Ct. at 1605. The Supreme Court in Logan, supra, stated:

"To be sure, this Court has noted that picketing involves elements of both speech and conduct, i.e., patrolling, and has indicated that because of this intermingling of protected and unprotected elements, picketing can be subject to controls that would not be constitutionally permissible in the case of pure speech [citing cases, including Hughes v. Superior Court, supra]."

See, also, Kelly v. Page, 5 Cir., 1964, 335 F.2d 114.

We do not adjudicate the merits of complainant's substantive claims on this appeal, Virginia Airmotive Limited v. Canair, supra. We pass only upon whether in the preliminary injunction issued the District Court fell into an abuse of discretion. We are of the opinion that except in one particular it did not.

In so holding we use the closing words of the Supreme Court in Hughes v. Superior Court:

"We do not go beyond the circumstances of the case. Generalizations are treacherous in the application of large constitutional concepts." 339 U. S. at 469, 70 S.Ct. at 723.

In conclusion, we allude to the contentions of the appellant as to the arrest and bail. As to bail we point to what was said by Judge Simpson, already quoted.

■ The record shows that very few of the arrests were made by the police as for misdemeanors committed in their presence. Rather, almost all the arrests were made after the store owners or their representatives preferred charges in affidavits filed before a desk sergeant of the Hattiesburg police, who is the deputy clerk of the police court. It was he who issued the warrants of arrest. Under § 3374–105 of the Mississippi Code this officer "shall issue all process from the [police] court". He had no authority to take the affidavits and, without the direction of the police justice, he had no authority to issue the warrants of arrest, see City of Jackson v. Howard, 135 Miss. 102, 99 So. 497 (1924); Porter v. State, 135 Miss. 789, 100 So. 377 (1924). The defendants should have moved to quash the warrants, which would have ended the matter. There was no necessity for resort to the federal courts.

The record shows that those arrested at the scene were not arrested for picketing but for other conduct, one, for example, for shoving a police officer. There is nothing to indicate that these defendants could not or would not receive a fair trial on these charges.

■ This Court recognizes, as do all courts, that First Amendment rights are zealously to be protected. In fact, the decision of this case turns chiefly on conduct, rather than speech. Of course, we take into consideration epithets addressed to customers and language which in all reason must be considered as insulting or threatening. At the same time, we are convinced that if peaceful picketing is allowable, as, for instance, not in the furtherance of an unlawful purpose, then a command of absolute silence is constitutionally impermissible, Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1964); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93

L.Ed. 513 (1949); Guyot v. Pierce, 5 Cir., 1967, 372 F.2d 658; Davis v. Francois, 5 Cir., 1968, 395 F.2d 730. Some decibels of communication must be allowed. Insofar as the temporary injunction exacts muteness it must be modified.

■ In fashioning the modification, we are not unmindful that "Utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force. Such utterance was not meant to be sheltered by the Constitution", Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc., 312 U. S. 287, 61 S.Ct. 552, 85 L.Ed 336 (1941). "Picketing cannot be dogmatically equated with constitutionally protected freedom of speech. Picketing is speech mixed with conduct. Acts of coercion going beyond the mere influence exerted by the fact of picketing are not constitutional prerogatives", Cafeteria Employees Union, Local 302, v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58 (1943). See, also, Cox v. Louisiana, supra.

The decisive consideration is that *total denial* of free speech is never to be approved.

■ On a picket line, however, and particularly in the support of a boycott of a lawful business, the Constitution affords no protection to speech which is violent, threatening, menacing, insulting, or clearly calculated to provoke a breach of the peace by others, Wright v. City of Montgomery, 5 Cir., 1969, 406 F.2d 867.

That part of the temporary injunction directing that the pickets "shall not utter any sounds" is hereby modified so as to require that in the exercise of peaceful picketing the participants "shall not while on the picket line or within reasonable proximity thereof give utterance to speech which is violent, threatening, menacing, insulting, or clearly calculated to provoke a breach of the peace by others".

And so modified, the temporary injunction is affirmed and the cause remanded.