920 F.2d 262
 59 USLW 2464, Fed. Sec. L. Rep. P 95,883
 JUSTIN INDUSTRIES, INC., Plaintiff-Counter-Defendant, Third
Party Defendant-Appellee,
v.
CHOCTAW SECURITIES, L.P., Sutherland Lumber-Southwest, Inc.,
Reatta Partners, L.P., Barry Rosenstein Limited Partnership,
Barry S. Rosenstein Corp., Perry H. Sutherland, Barry S.
Rosenstein, Dwight D. Sutherland, Christopher L. Sutherland,
and Nancy L. Sutherland, Defendants-Counter-Claimants, Third
Party Plaintiffs-Appellants,
v.
John JUSTIN, Marvin Gearhart, Robert E. Glaze, Dee J. Kelly,
Oran F. Needham, John V. Roach, Dr. William E.
Tucker, and Bayard H. Friedman,
Counter-Defendants, Third
Party Defendants-Appellees.
 No. 90-1823.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 18, 1990.
 
 Rod Phelan, James Allen Cox, Baker & Botts, Dallas, Tex., George Zimmermann, Skadden, Arps, Slate, Meagher & Flom, New York City, R. Paul Yetter, Baker & Botts, Houston, Tex., for defendants-counter-claimants, third party plaintiffs-appellants.
 Donald Herrmann, Edmund Glen Johnson, Kelly, Hart & Hallman, Ft. Worth, Tex., for plaintiff-counter-defendant, third party defendant-appellee.
 David M. Becker, Wilmer, Cutler & Pickering, Washington, D.C., for Justin, Gearhart, Glaza, et al.
 Appeal from the United States District Court for the Northern District of Texas.
 Before RUBIN, HIGGINBOTHAM, and SMITH, Circuit Judges.
 PER CURIAM:
 
 I.
 
 1
 Sutherland Lumber-Southwest, Inc. (Sutherland), is seeking to acquire Justin Industries, Inc. (Justin), in a hostile takeover. As part of its takeover defense, Justin adopted a supermajority provision in its bylaws that made it difficult to remove its directors. Justin failed to disclose its amendments in several filings with the Securities & Exchange Commission (SEC), in violation of the securities laws.
 
 
 2
 Although the bylaw amendments subsequently were rescinded, Sutherland claims that it was injured by the amendments because, while they were in force, Justin's directors were re-elected. Even though the directors ran unopposed, Sutherland contends that some of the shareholders might have nominated an opposing slate, had they known of the bylaw amendments.
 
 
 3
 Sutherland urges that we set aside Justin's election and, by preliminary injunction prior to trial on the merits, order Justin to hold a new election in which Sutherland can run its own candidates. The district court refused to grant such a mandatory injunction to Sutherland, 747 F.Supp. 1218, and Sutherland now appeals that denial. We affirm the denial of a preliminary injunction and remand the matter for further proceedings.
 
 II.
 A.
 
 4
 In early 1989, Sutherland began acquiring stock in Justin. Justin has a nine-member board of directors, eight of whom are outside directors and also appellees in this case. At issue is the validity of the re-election of these directors.
 
 
 5
 Beginning in the fall of 1989, Sutherland proposed that it take over Justin. Justin rejected these overtures and adopted a number of "shark repellants," including a shareholder rights plan ("poison pill") (enacted on October 6, 1989) and a requirement of a supermajority vote for removal of directors (enacted on November 3, 1989). In addition, at its regularly scheduled December meeting, Justin's board considered stock option amendments, pension plan amendments, and "golden parachutes" for top managers. The board, however, did not adopt any of these measures; instead, it authorized management to investigate these options and to present them at a subsequent meeting.
 
 
 6
 On February 20, 1990, Justin sent out proxy solicitations for its annual meeting. The only item on the agenda was the election of directors, all of whom were running unopposed. The proxies did not indicate that Justin had changed its bylaws; all directors were re-elected by wide margins on March 23, 1990. Immediately after the election, Justin's board passed several change-of-control measures, including the golden parachutes.
 
 
 7
 On March 26, 1990, Justin filed its Form 10-K 1989 annual report with the SEC. The report disclosed the golden parachutes but did not mention the amendments to the bylaws. On August 24, 1990, Justin filed a Form 8-K amendment with the SEC to note the bylaw amendments adopted nine months previously. On September 7, 1990, Justin's board met again and rescinded the supermajority removal clause.B.
 
 
 8
 Justin sued Sutherland, alleging, inter alia, that Sutherland had violated section 13(d) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. Sec. 78m(d) (1988), by purchasing more than five percent of Justin's stock without filing with the SEC. Sutherland counterclaimed, alleging that Justin deliberately and knowingly had kept the bylaw amendments and golden parachutes secret, in violation of section 14(a) of the 1934 Act, 15 U.S.C. Sec. 78n(a) (1988), and SEC Rule 14a-9, 17 C.F.R. Sec. 240.14a-9 (1990).
 
 
 9
 At the hearing, Choctaw Securities, L.P. (Choctaw), Sutherland's co-defendant, filed a motion for an injunction. Choctaw contended that there was no need for a trial on the merits because all material facts were agreed upon. Justin contested the motion for injunction, contending that what Choctaw really was requesting was a summary judgment without complying with the terms of Fed.R.Civ.P. 56.
 
 
 10
 The district court denied Sutherland's motion, holding that Sutherland had failed to satisfy the prerequisites for the issuance of any injunction, as Sutherland had an adequate remedy at law. Since Sutherland held more than ten percent of Justin's outstanding stock, the court reasoned, it could call a special shareholders' meeting, pursuant to the bylaws, to elect new directors, making equitable relief superfluous. The court concluded by stating that even if this were not true, Justin's failure to disclose its bylaw amendments was not a material omission.
 
 III.
 A.
 
 11
 Justin challenges the jurisdiction of this court to hear Sutherland's appeal. Choctaw entitled its request a "Motion for an Order Requiring Justin To Hold an Annual Shareholders Meeting for the Election of Directors." Choctaw believed that this was a request for a permanent injunction. The district court did not characterize Choctaw's motion, as it concluded that no matter how Choctaw's motion was classified, Choctaw had failed to meet the requirements for a preliminary or a permanent injunction.[1]
 
 
 12
 We conclude that the district court's order was appealable under 28 U.S.C. Sec. 1292(a)(1) (1988). Although arguably few facts may remain for development, Justin correctly notes that it is entitled to a trial on the merits before permanent relief can be granted. Accordingly, we hold that Choctaw's motion was for a preliminary injunction, reviewable under section 1292(a)(1).[2]
 
 
 13
 Our disposition of this matter depends, however, upon how the motion is characterized. When faced with a procedurally ambiguous motion, we look to its substance rather than to how the parties label it. See Tuley v. Heyd, 482 F.2d 590, 593 (5th Cir.1973); Smith v. Grady, 411 F.2d 181, 186 (5th Cir.1969).
 
 B.
 
 14
 Justin also contends that we have no jurisdiction because a federal court cannot order new elections for the failure to disclose bylaw amendments. But this ignores our authority "to provide such remedies as are necessary to make effective the congressional purpose" of ensuring full and fair disclosure to shareholders. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970). Thus,
 
 
 15
 where duplicity or material nondisclosures result in the election of directors by deceived stockholders the election may be set aside. If such an election were allowed to stand, the innocent stockholders would suffer the consequences of the violations and this is the very group that the Securities Act of 1934 is designed to protect.[3]
 
 
 16
 The law is the same in this circuit. See Gladwin v. Medfield Corp., 540 F.2d 1266, 1271 (5th Cir.1976) (upholding district court's determination mandating new solicitation materials and new elections).
 
 
 17
 Justin also urges that we should not grant relief because even if we order the requested new elections, the only persons who could run would be those who ran in the previous, unopposed election. This argument has weight, as we will not grant equitable relief where doing so would be useless.
 
 
 18
 What Justin overlooks, however, is that if the tainted election were overturned, the clock would not merely turn back to the day of the election. Rather, the appropriate point is the date upon which the disclosure should have been made. Under the facts of this case, that would have been during the period of time during which nominations still could have been made.
 
 
 19
 Accordingly, what is important is not just how shareholders would have chosen to vote, but also whether the disclosure might have influenced someone else to run. "Materiality does not depend on which way the information is likely to influence the shareholders to vote; rather it depends on whether the information is likely to influence the decision to vote." Gladwin, 540 F.2d at 1270 (emphasis in original). The directors might not have been unopposed had they disclosed the entrenching bylaw changes. In an appropriate case, therefore, a federal court would have the power to order the relief sought. We therefore have jurisdiction over this appeal.
 
 IV.
 A.
 
 20
 The district court found that Justin's failure to disclose its bylaw amendments and golden parachutes was not material. Because materiality is "a mixed question of law and fact," TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450, 96 S.Ct. 2126, 2132-33, 48 L.Ed.2d 757 (1976), the standard of review varies, depending upon the particular question we are considering. The denial itself is evaluated under an abuse of discretion standard,[4] though we will review de novo the conclusions of law underlying the denial of injunctive relief. In re Fredeman Litig., 843 F.2d 821, 824 (5th Cir.1988).
 
 
 21
 Section 14(a) makes it unlawful to solicit proxies in violation of the securities laws; rule 14a-9 makes it unlawful to solicit shareholder action by means of proxy statements that omit to state any material facts. The Supreme Court has defined material information as that information as to which a plaintiff can show
 
 
 22
 a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.... [This standard] does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. What the standard does contemplate is a showing of substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.
 
 
 23
 TSC, 426 U.S. at 449, 96 S.Ct. at 2132.
 
 
 24
 When considering materiality, a court must evaluate the "total mix" of information available. Id. "The materiality of an omission in a proxy statement is determined by taking into account all information in the public domain and facts reasonably available to the public to be used by shareholders in interpreting the information in the proxy sent to them." T. Hazen, supra, Sec. 11.4 at 315 (footnote omitted).
 
 B.
 
 25
 Justin contends that the hidden bylaw changes were not material, as their disclosure would not affect a typical investor. Justin argues that the directors were running unopposed and that when the bylaw changes eventually were disclosed, the market did not revalue Justin's stock.
 
 
 26
 In general, materiality is a question reserved to the fact-finder. See Sioux, Ltd., Sec. Litig. v. Coopers & Lybrand, 914 F.2d 61, 65-66 (5th Cir.1990). Directors are the shareholders' representatives and, in all areas save a few affecting corporate control and fundamental changes, are the last word on most corporate decisions. The removal power is an important check that a shareholder has on the board and indirectly on management.
 
 
 27
 Changes in the relative power of shareholder and director are fundamental to corporate governance. Considering that Congress believed that "fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange," J.I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), changes in that relationship bear a strong semblance of materiality. See id. at 431-32, 84 S.Ct. at 1559-60.
 
 
 28
 We do not say that every change in a company's bylaws is necessarily material. Rather, we address materiality in the context in which Justin changed its bylaws. It is a common strategy to try to replace a recalcitrant target board, and Sutherland's own Schedule 13D revealed that it was contemplating waging a proxy fight. Considering that Justin's board recently had signaled its resistance to any hostile takeover, the average investor mulling the future value of his or her stake and considering for whom to vote in the director elections could well consider the bylaw changes material.[5]
 
 
 29
 The district court held otherwise, stating that "[t]he average shareholder does not have enough time or interest to scrupulously monitor the affairs of each corporation in which he invests. Decisions are made, often without adequate information, let alone knowledge of the bylaws governing the corporation." This reasoning is called into question by the clear intent of the securities laws to foster informed investing based upon disclosed information.[6]
 
 
 30
 The securities laws mandate disclosure precisely because Congress believed that shareholders wish to possess "adequate information" before they invest. This is why the registration statement called for in Regulation S-K, 17 C.F.R. Sec. 229.10 et seq. (1990), requires all major corporations to file publicly all articles of corporate governance, including bylaws. Rule 13a-11, 17 C.F.R. Sec. 240.13a-11 (1990), requires the filing on Form S-K of current reports within fifteen days of material changes affecting corporate governance. There is little reason to give target boards an incentive to withhold changes to bylaw provisions.
 
 
 31
 For many of the same reasons, Justin's plan to adopt golden parachutes for its top executives displays similar indicia of materiality. Rule 14a-3, by incorporating Schedule 14A, requires directors to disclose certain proposals affecting executive compensation in any proxy solicitation. Schedule 14A requires directors to describe any plan or arrangement to pay executive officers more than $60,000 upon a change in control. 17 C.F.R. Sec. 240.14a-101 (1990) (incorporating item 404 of Regulation S-K, 17 C.F.R. Sec. 229.404 (1990)). See also id. Sec. 240.14a-402 (1990).
 
 
 32
 The record is somewhat incomplete, but it may be that the decision to implement the golden parachutes was made well before the meeting. If so, the board should have disclosed that fact to voting shareholders in the February 20 proxy solicitation. The average investor probably would be interested to know when directors facing a hostile takeover enact lucrative severance contracts designed to entrench management. The golden parachutes thus may be an important component in the "total mix" of information available to the investor. However, we leave development of this issue to the district court. We say only that we refuse to pretermit the inquiry, as we cannot conclude that adoption of the parachute provision would in no event be material.
 
 
 33
 In sum, we find that the district court erred in making the sole test of materiality the effect-upon-a-typical-investor test. On remand, we leave it to the district court, in the first instance, to make the determination of materiality vel non based upon the evidence adduced at the hearing and upon the applicable law.
 
 V.
 
 34
 In addition to materiality, Sutherland also must show irreparable injury and the absence of an adequate remedy at law.[7] As an initial matter, Sutherland correctly notes that while it does have the right to call an election on its own to remove directors, this is not the equivalent of the remedy of the new election that it now seeks. A special meeting to remove directors requires a greater number of votes for Sutherland to prevail, as it requires a majority of all outstanding shares; in a new election, however, Sutherland could prevail with only a majority of all shares present and voting. The difference, which could change the result in a close election, makes the remedy Sutherland seeks superior to the remedy that is available to it without judicial relief.
 
 
 35
 In general, where a self-help remedy is not "as complete, practical and efficient as that which equity could afford," Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255 (1923), courts will grant a preliminary injunction. "[A] court of equity will exercise jurisdiction even when a plaintiff has another remedy, if that remedy is not as practicable and efficacious to the ends of justice and its proper administration as the remedy in equity." Vicksburg, Shreveport & Pac. Ry. v. Schaff, 5 F.2d 610, 611 (5th Cir.1925). In this case, however, the presence of Sutherland's self-help remedy means that Sutherland has not necessarily suffered an injury that is incapable of repair without judicial intervention.
 
 
 36
 Moreover, the securities acts are designed, in the main, to protect shareholders. All of the offending bylaw provisions, save the golden parachutes, have been rescinded. This makes us question whether, in the absence of immediate equitable relief, there is irreparable harm; and even if there is, this factor bears upon whether Justin has demonstrated a probability of success on the merits.
 
 
 37
 We view as significant the fact that Sutherland's real objective here is a takeover of Justin. There is nothing improper in this goal, but in determining the presence of irreparable harm we must, at least in part, view the problem from the point of view of Sutherland's corporate leadership.
 
 
 38
 From this perspective, it is not evident why Sutherland could not have nominated a competing slate of directors for Justin. If a Justin board friendly to Sutherland's advances would be helpful to Sutherland (as we assume), Sutherland reasonably could have concluded, even without knowing of the "secret" bylaw changes, that it should field a competing slate. In other words, it is not apparent that Sutherland was thwarted in any effort to wage a proxy fight for board control. We are reluctant to plow ahead in the light of such truncated proceedings.
 
 
 39
 Courts grant preliminary injunctions sparingly. "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." Canal Authority, 489 F.2d at 576. On the basis of the record now before us, we conclude that there was an insufficient showing of irreparable injury. Hence, the district court correctly refused to grant a temporary injunction.
 
 VI.
 
 40
 On the other hand, the parties were not allowed a full evidentiary hearing to develop the question of permanent equitable relief. They are entitled to a complete hearing on the merits before a final judgment granting or denying permanent relief is rendered. Thus, we AFFIRM the denial of preliminary relief and REMAND for an expedited hearing on the issues regarding permanent relief.
 
 
 41
 It is so ordered.
 
 
 
 [1]
 In its brief, Justin argues that the district court's holding actually was a denial of a request for a summary judgment, which is not usually immediately appealable. We hold, however, that the court in effect denied Choctaw's request for a preliminary injunction, which is appealable under Sec. 1292(a)(1). Even if Choctaw's motion were characterized as a denial of summary judgment, however, this denial would be appealable under the circumstances presented here. The plain language of Sec. 1292(a)(1) provides that the "courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts ... granting, ... refusing or dissolving injunctions." 28 U.S.C. Sec. 1292(a)(1) (1988) (emphasis added); accord Browning v. Navarro, 887 F.2d 553, 555 (5th Cir.1989) ("the denial of summary judgment was appealed as of right under 28 U.S.C. Sec. 1292(a)(1)")
 
 
 [2]
 This decision is not affected by Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996-97, 67 L.Ed.2d 59 (1981). In that case, the Court stated that appellate courts do not have jurisdiction over interlocutory appeals under Sec. 1292(a)(1) unless the orders at issue have irreparable consequences. We already have held, however, that "Carson does not apply to orders specifically granting or denying injunctions." Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A., 875 F.2d 1174, 1176 (5th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). As the district court a quo specifically denied Choctaw's request for an injunction, Carson does not bar us from exercising appellate review
 
 
 [3]
 T. Hazen, The Law of Securities Regulation Sec. 11.6 at 324 (citing GAF Corp. v. Heyman, 559 F.Supp. 748 (S.D.N.Y.), rev'd on other grounds, 724 F.2d 727 (2d Cir.1983); Treadway Cos. v. Care Corp., 638 F.2d 357, 385 (2d Cir.1980)). Accord Bertoglio v. Texas Int'l Co., 472 F.Supp. 1017, 1021 (D.Del.1979) ("[W]hen a violation of the Commission's proxy rules has been established, it is well within the equitable power of [a] court to void the results of a shareholders' vote and to require both a new solicitation of proxies and a second shareholder vote.")
 
 
 [4]
 Di Giorgio v. Causey, 488 F.2d 527, 528 (5th Cir.1973). The standard would be the same if evaluated as a permanent injunction. See Lubbock Civil Liberties Union v. Lubbock Indep. School Dist., 669 F.2d 1038, 1049 (5th Cir.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983)
 
 
 [5]
 Cf. Disclosure in Proxy and Information Statements: Anti-takeover or Similar Proposals, Exch. Act Release No. 15,230 (Oct. 8, 1978) (when shareholders will be voting, proxy materials are required to reveal supermajority vote provisions). "Doubts as to the critical nature of information misstated or omitted ... [should] be resolved in favor of those the statute is designed to protect." TSC, 426 U.S. at 448, 96 S.Ct. at 2132
 
 
 [6]
 TSC, 426 U.S. at 448-49, 96 S.Ct. at 2131-32. The district court in part based its conclusion that the bylaws amendments were not material upon the fact that when Justin finally disclosed the amendments, the stock market did not react. This cannot be a dispositive test; indeed, it seldom will be relevant. First of all, the proper date at which to judge materiality is the date when the bylaws should have been disclosed; for all we know, the market might have reacted then if the amendments had been made public. Second, the relevant test is defined by TSC, not by market movements
 
 
 [7]
 To be entitled to a preliminary injunction, Sutherland and Choctaw must demonstrate (1) a substantial likelihood of success on the merits; (2) irreparable injury during the pendency of the litigation (and the absence of an adequate remedy at law); (3) that the threatened injury to the movants outweighs the harm that the injunction may do to Justin; and (4) that granting the preliminary injunction will not disserve the public interest. Canal Authority v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). And because Sutherland is seeking a mandatory injunction, it bears the burden of showing a clear entitlement to the relief under the facts and the law. Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir.1971) (per curiam)